102 P.2d 673

ZAMORA v. MIDDLE RIO GRANDE CONSERVANCY DIST.

No. 4496.

Supreme Court of New Mexico.

April 24, 1940.

W. A. Keleher and Theo. E. Jones, both of Albuquerque, for appellant.

Stanley W. P. Miller and George R. Craig, both of Albuquerque, for appellee.

BICKLEY, Chief Justice.

Plaintiff, in the latter part of 1937, filed his petition in the District Court for assessment of damages, naming as defendant the Middle Rio Grande Conservancy District, hereafter referred to as the District. Plaintiff alleged that he is a property owner within the limits of the District, and that in about the year 1932 the defendant constructed through plaintiff's land an irrigation ditch; that said ditch crosses plaintiff's land in such a way that a portion of said land cannot be irrigated, but that a portion of the land in said tract can be irrigated from said ditch; that in the construction of said ditch, the District failed to make provision to take care of flood waters occurring on said land; that as a result of said construction and the coming of floods, the waters backed up against the ditch until they became of such force that said ditch broke, causing the waters to flood the lands of plaintiff, destroying his crops; that in the construction of said ditch, the defendant failed, refused and neglected to provide a means for furnishing water to the plaintiff for the irrigation of his land, although ten acres thereof were found by defendant to be capable of irrigation and an assessment had been placed against said ten-acre tract for the benefits derived from the formation and operation of said District, that the flood waters heretofore mentioned damaged a house owned by plaintiff and situated on his land within the District.

The plaintiff avowedly was proceeding under the provisions of Sec. 30-904, N.M.S. A., and upon the filing of his petition procured an order directed to the defendant,

requiring it to show cause why an order should not be entered directing "the Board of Appraisers of said Defendant" to view the plaintiff's property described in said petition and assess the damages sustained by the plaintiff by reason of the acts and neglect of the defendant, and thereafter report the same to the court. The defendant made response to this order to show cause, challenging the right of the plaintiff to so proceed, which response raised two principal questions: First, that the term of office of the Board of Appraisers of the defendant District had expired and that the defendant had no appraisers or Board of Appraisers; second, that the Board of Appraisers, during its term of office, appraised all damages and benefits that might accrue by execution of the official plan of the District; that a report thereof was made by the Board of Appraisers to the court, and that, although notice and opportunity was given to plaintiff, he made no objection thereto; and that the plaintiff, therefore, had acquiesced in the report filed and conclusions of the Board of Appraisers in respect to his property. Thereafter, the plaintiff filed his amended petition or complaint. The principal new matter incorporated in the amended complaint was in explanation of and in resistance to defendant's charge of acceptance and acquiescence in the Board of Appraisers' report, findings, etc, alleging that the official plan referred to in defendant's response contained only a rough outline of where the ditch would be, but did not contain any details and was approved in the year 1928, but that it was not until the year 1933 that the defendant District worked out in detail the construction of said ditch, and that plaintiff had no notice whatever of the detailed map or the plan of construction worked out in the year 1933 and had no opportunity to protest that the said plan of construction was inadequate to protect the plaintiff's property from flood waters flowing across his land and that it was not until the year 1933 that plaintiff was apprised that the construction of the ditches and laterals and canals of the District did not provide for furnishing him with water to irrigate his land under the District. The prayer of the amended complaint was practically the same as in the original petition.

Thereupon, a new order to show cause was issued directed to the defendant and the defendant filed its response thereto in which it advanced the same contentions set forth in its original response, with the additional assertion that the amended complaint does not set forth facts sufficient to constitute a cause of action, for the reason that there is no authority in the Conservancy Act of New Mexico for the appointment of a board of appraisers after the appraisals of benefits are filed and finally determined by the court, which had already been done; that no authority exists for proceeding as the plaintiff has elected to proceed. The response of defendant was virtually a demurrer to the amended complaint. The trial court, upon hearing the matter, concluded that since the plaintiff was proceeding under the provisions of sec-

tion 30-904, N.M.S.A., and the court, being of the opinion that plaintiff, under the facts stated in the complaint, was not authorized to proceed under said statute but must bring an independent tort action for any wrongs he may have suffered at the hands of the defendant, and that the relief sought by the order to show cause should be denied and the complaint dismissed, and it was so ordered. From this order of the District Court, plaintiff has appealed. It is conceded by both parties that the sole question in this case is one of procedure. No question of fact is involved. It is also asserted by counsel for both parties that the case is one of first impression in this jurisdiction and that there is very little illustrating authority to be cited upon the subject, and that in other states where the same or similar statutes exist, no decisions are known which will be controlling in construing our statute. It is also asserted by counsel for both parties that this is a very important case, because of the fact of the large acreage of land in the District, and that obviously many land owners in the District may be affected in much the same way that the plaintiff finds himself, and that to determine the procedure in this case will map the course to be followed by any others in the District in seeking redress of wrongs alleged to be suffered at the hands of the District in the execution, maintenance and operation of the official plan. We feel justified, therefore, in quoting at length the statutes that have a bearing upon the problem. Where italics appear, they have been supplied by us for emphasis.

*"Remedy for injury by a district.* In case any person or public corporation, within or without any district organized under this act, *may be injuriously affected* with respect to property rights in any manner whatsoever by any act performed by any official or agent of such district, *or by the execution, maintenance or operation of the official plan,* and in case no other method of relief is offered under this act, the remedy shall be as follows:

"(1) The person or public corporation seeking relief shall petition the court before which said district was organized for an appraisal of damages sufficient to compensate for such injuries.

"(2) The court shall thereupon direct the board of appraisers of the district to appraise said damages and injuries, and to make a report to the court on or before the time named in the order of the court.

"(3) Upon the filing of such report, the court shall cause notice to be given to the petitioner and to the board of the district, of a hearing on said report. At the time of such hearing, the court shall consider said report of the appraisers, and may ratify said report or amend it as the court may deem equitable, or, may return it to the said appraisers and require them to prepare a new report.

"(4) Upon the filing of an order of the court approving said reports of the appraisers, with such modifications as it may

have made, said order shall constitute a final adjudication of the matter, unless it shall be appealed from in the manner hereinafter provided, within twenty (20) days.

"(5) Appeal from said order to a jury may be had as hereinbefore provided in case of condemnation proceedings, by the petitioners, by the board of the district, or by any person or public corporation adversely affected by the report of the board of appraisers.

"(6) *No damages shall be allowed under this section which would not otherwise be allowed in law;* Provided, however, that nothing in this section shall be construed to deprive any person or public corporation of the remedy of injunction in the case of prospective irreparable injury. (L. '27, Ch. 45, § 904." Section 30-904, N.M.S.A.

*"Appointment of appraisers.* (1) At the time of making its order organizing the district or at any time thereafter, the court, or board of judges as the case may be, in the manner provided shall appoint three appraisers (herein described and referred to as appraisers or the board of appraisers), *whose term of office shall be until the appraisals of benefits and damages are filed and finally determined by court and whose duty it shall be to appraise the lands or other property within and without the district to be acquired for rights of way, reservoirs and other works of the district, and to appraise all benefits and damages accruing to all land within or without the district by reason of the execution of the official plan.*

"(2) Two of said appraisers shall be freeholders residing within the state of New Mexico, who may or may not own lands within said district. Each of the appraisers shall, before taking up his duties, take and subscribe to an oath that he will faithfully and impartially discharge his duties as such appraiser, and that he will make a true report of such work done by him.

"(3) The said appraisers shall at their first meeting elect one of their own number chairman, and the secretary of the board or his deputy shall be ex-officio secretary of said board of appraisers during their continuance in office. A majority of the appraisers shall constitute a quorum, and a concurrence of the majority in any matter within their duties shall be sufficient for its determination.

"(4) The court or board of judges as the case may be, *shall fill all vacancies in the board of appraisers, or may appoint a new board,* all in the manner provided, *as occasion may require,* which new board, if appointed, shall perform all the duties and exercise all the powers of the appraisers of the district. (L. '27, Ch. 45, § 401." Section 30-401, N.M.S.A.

By Sec. 30-412, it is provided that in case alterations or additions are made to the official plan, so as to materially modify the resulting damages or materially reduce the benefits "for which the board is not able to make amicable settlement" or materially increase the benefits "in such a manner as to require a new appraisal",

or increase the total cost more than ten per cent above that estimated in the official plan, "the court shall direct the appraisers (which may be the original board, or a new board appointed by the court on petition of the board of directors) to appraise the property to be taken, benefited *or damaged* by the proposed alterations or additions." Sections 30-413 and 30-414 are as follows:

"*Property exempt and later liable to assessment.* If property in any district organized under this act is not liable to assessment at the time of the execution of the work, but afterwards, during the period when such work is being paid for, become liable to assessment, such property shall thereupon be appraised and assessed. (L. '27, Ch. 45, § 413.

"*Subsequent appraisals.* In case any property within or without any district is benefited, which for any reason was not appraised in the original proceedings or was not appraised to the extent of benefits received; or in case any person or public corporation shall make use of or profit by the works of any district to a degree not compensated for in the original appraisal; or in case the board finds it necessary subsequent to the time when the first appraisals are made, to *damage* or *take* any additional property, the board, at any time such condition becomes evident, shall direct the appraisers to appraise the benefits, or the enhanced benefits received, *or damages* or the value of property *taken;* and the proceedings outlined for appraising lands not at

first included within the boundaries of the district shall in all matters be conformed to, including notice to the party or parties interested; or the board may, at its discretion, make settlement with such parties for such use, benefit, damage, or property taken. (L. '27, Ch. 45, § 414." (Italics ours.)

 It does not require much argument to bring us to the conclusion that the appraisers or board of appraisers is a tribunal continuing in character as long as there is work to be done by such tribunal. Such board of appraisers may be kept intact by filling vacancies therein, or the court may appoint a new board "as occasion may require", which new board "shall perform all the duties and exercise all the powers of the appraisers of the district". There is nothing more definite about the "term of office" of the appraisers than that it shall be until the appraisals of benefits have been filed and finally determined by the court. The appraisers receive compensation for their services upon a per diem basis for the time actually employed in the performance of their duties. Sec. 30-528. Their duties are, however, to appraise only such damages as are contemplated by the statute. So it appears that the first ground of the respondent's response (in effect, a demurrer) is without merit.

 We turn then to the contention of appellee that the legislature, in enacting Sec. 30-904, intended that its provisions shall apply only to the appraisal of damages growing out of the taking or damaging of private property for public use, according

to the principles of the law of eminent domain, and that it did not intend to abolish the existing procedure for tort actions nor to provide a new procedure therefor. Paragraphs 4 and 5 of the very section plaintiff relies on indicate that the legislature intended the section to apply to actions in the nature of condemnation proceedings for the taking or damaging of private property for public use, since these paragraphs provide that the land owner may appeal to a jury from the order approving the reports of the appraisers as may be done in condemnation proceedings. The language in Sec. 5, "as hereinbefore provided in case of condemnation proceedings," doubtless refers to Sec. 30-311, N.M. S.A., which is as follows: *"Condemnation under general law.* The district shall also have the right, instead of having appraisals made by the appraisers, to condemn for the use of the district, according to the procedure provided by chapter XXXIV (Ch. 43) of the codification of 1915, and all amendatory or supplementary acts, for the appropriation of land or other property taken for public use; any land or property within or without said district not acquired or condemned by the court on the report of the appraisers. (L. '27, Ch. 45, § 311."

It is thus readily suggested that the portion of the Conservancy Act pertaining to ascertainment of the amount of compensation for lands taken and damaged to be arrived at by the board of appraisers is a substitute for condemnation proceedings referred to in Sec. 30-311. But there is nothing therein to suggest such a radical departure as is contended for by the plaintiff.

The language of Sec. 20 of Article 2 of our Constitution is: "Private property shall not be taken or damaged for public use without just compensation."

The equivalent of the phrase "taken or damaged" occurs frequently in those portions of the Conservancy Act pertaining to appraisals of benefits and damages. We find it unnecessary to cite them in detail because we find in the section relied upon by plaintiff language so strongly indicative of the legislative intent that the provisions of the Conservancy Act pertaining to appraisals of damages mean damages to property in the sense employed in eminent domain proceedings that it is hardly necessary to use supporting argument: "In any case any person * * * may be *injuriously affected* with respect to property rights * * * by the execution, maintenance or operation of the official plan * * * the remedy shall be as follows:"

We have seen in the sections providing for appeals from orders of confirmation of appraisals by the court that the legislature displayed a familiarity with the Eminent Domain Act. In a portion thereof, Section 43-109, both *compensation* and *damages* are referred to and it is said that the actual value of the property "actually taken" shall be the measure of compensation, and, also, that "the basis of damages to property not actually taken but *injuriously affected*" shall be determined as of the date of the

notices, etc. While the words "damaged", "injured", and "injuriously affected" have been said to be equivalent in meaning and extent (Lewis, Eminent Domain, 3d Ed., Sec. 347), the phrase "injuriously affected" is peculiarly appropriate to eminent domain procedure and the fact that the legislature, in the Conservancy Act, in Sec. 30-904, used the identical phrase employed in the Eminent Domain Act is significant and persuasive that they intended to limit the remedy provided for in Sec. 30-904 to damages of the character usually suffered through actually taking or injuriously affecting private property appropriated to a public use. We think the various provisions of the Conservancy Act pertaining to compensation and land actually taken and damages resulting from the land being injuriously affected by the execution, maintenance or operation of the official plan manifests an intention to avoid or relax the doctrine often repeated in the decisions that the damages must be assessed once for all and that once assessed according to law, they include all the injuries resulting from the particular appropriation and from the construction and operation of the works in a reasonable and proper manner for all time to come. Discussion of this doctrine and a criticism thereof will be found in Lewis, Eminent Domain, 3d Ed., Sections 819, 820. In Sec. 821, Mr. Lewis says: *"Damages Arising From Construction of the Works.* The authorities undoubtedly hold that the assessment of damages will be presumed to include all damages which arise from constructing the

works in a reasonable and proper manner, having regard to the efficiency of the works on the one hand and the interest of the landowner on the other. Where a subsequent claim for damages is made, arising from the construction of works, the question will be whether the works have been constructed in a proper manner, and whether the damage *necessarily* results from the works as so constructed. If these questions are answered in the affirmative, then the damages complained of will be presumed to have been considered in estimating the damages, and no further recovery can be had. *If they are answered in the negative,* then a recovery can be had in an appropriate *common law action.* If the damages are assessed after the works have been constructed, all damages occasioned by such construction and by the use and maintenance of the works in their then condition, will be presumed to have been included and no subsequent action will lie therefor." (Italics supplied.)

We quote further from Mr. Lewis' treatise:

"§ 240 (154). *Damages From Negligence.* Damages resulting from negligence are always actionable. Consequently a recovery may be had for all damages which result from the negligent or improper construction or operation of public works. Such damages are, of course, not a taking, and are not included in the award of compensation."

"§ 829 (574). *The Assessment Does Not Include Damages Resulting From the Im-*

*proper Construction or Negligent Use of the Works.* This is implied in the preceding sections, and has already been referred to in the chapter upon damages. If such damages arise at any time, the owner at the time may have his *common law remedy* therefor." (Italics supplied.)

"§ 714 (482). *Damages to be Assessed on the Basis of a Proper Construction and Use. Damages From Improper Construction or Use to be Excluded.* Damages are to be assessed on the basis that the works will be constructed and operated in a skillful and proper manner. Thus in case of railroads it must be assumed that they will construct necessary and proper culverts, and that, in bridging streams, they will make waterways of sufficient capacity and so place the piers and abutments as not to do any unnecessary injury to the adjacent lands. All damages resulting from neglect in construction or from negligence in the use of the property or works may be recovered by appropriate actions by the parties damnified when such damages occur, and nothing should be allowed on the theory that such negligence may happen. * * "

"§ 933 (651). *Remedy for Damages Arising From the Negligent or Improper Construction of Works.* As to the proper remedy for such damages, no controversy exists, and it is sufficient to say that all the appropriate legal and equitable remedies are open to the aggrieved party the same as though the persons responsible for the damages were not acting under the eminent domain power."

In the last paragraph of Sec. 30-904, N.M.S.A., upon which plaintiff relies, we find: "No damages shall be allowed under this section which would not otherwise be allowed in law." We think this means in the law of eminent domain. This view is supported in Re Miami Conservancy District, 25 Ohio N.P.R., N.S., 303, and in Re Miami Conservancy District, 25 Ohio N.P. R., N.S., 325, the only decisions cited in in the briefs purporting to construe statutes similar to our Sec. 30-904. In the first of these cases it appears that under the Conservancy Act the site of the City of Osborn was acquired by appropriation proceedings, and the village was moved to another and higher location. Thereupon, the First National Bank of Osborn sued for damages for the loss of good will by reason of the removal of the village. The court said that in the Conservancy Act itself, nothing was said of good will as an element of damages for injuring property incident to taking or damaging same for public use and so the court fell back on a consideration of the law of eminent domain as found in the text books, and finding that in the absence of statute, good will had never been held to be property in the constitutional sense, or treated as an element of value where property is appropriated in the usual course, and the Conservancy Act, having provided that no damage shall be recoverable thereunder not otherwise allowed by law, there could be no recovery in that case for the loss of good will.

It appearing that the basis of plaintiff's complaint is the alleged negligent and im-

proper execution, maintenance and operation of the official plan, we think damages arising from such negligence are excluded from the operation of the provisions of Sec. 30-904, N.M.S.A.

In view of all of the foregoing, we are of the opinion that the decision of the District Court was correct and should be affirmed, and it is so ordered.

BRICE, ZINN, SADLER, and MABRY, JJ., concur.