Alice H. ROSSIN, for herself and others similarly situated, Plaintiff-Appellant,

v.

SOUTHERN UNION GAS COMPANY, a corporation, Defendant-Appellee.

No. 72–1450.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 17, 1972.

Decided Jan. 17, 1973.

John A. Mitchell, of Mitchell, Mitchell & Alley, Santa Fe, N. M., for plaintiff-appellant.

Seth D. Montgomery, of Montgomery, Federici, Andrews, Hannahs & Morris, Santa Fe, N. M. (William R. Federici, of Montgomery, Federici, Andrews, Hannahs & Morris, Santa Fe, N. M., on the brief), for defendant-appellee.

Before BREITENSTEIN, HOLLOWAY and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

In this diversity action the plaintiff, Alice H. Rossin, sought damages against Southern Union Gas Company growing out of alleged property injuries incurred by her as a result of discontinuance of the natural gas supply at her home in Tesuque, Santa Fe County, New Mexico, on January 6, 1971. Appellee, a Delaware corporation, is the holder of a franchise to provide natural gas in the Santa Fe area and in other sections of New Mexico.

The case was tried to the court, and following a full presentation of evidence by both sides a decision was rendered in favor of the gas company and against the plaintiff.[1]

The relationship between appellant and the appellee dates back to 1934, at which time the original contract was entered into for the supply of natural gas to the home of appellant. The gas was supplied continuously until this present condition developed. The cutoff was for approximately 40 hours on January 7 and 8, and during this period plaintiff and her employees were required to utilize a number of fireplaces throughout the plaintiff's home to produce heat and to guard against the freezing of water pipes. She claims damages for injury to her property as well as impairment to her health.[2]

---

1. The action was originally filed in the State District Court for the County of Santa Fe and was removed on petition of the company.

2. The special damages claimed are as follows:

| | |
|---|---|
| Labor costs to handymen for repairing her frozen water heater and opening a clogged fireplace. | $179.20 |
| Wall repair | 37.54 |
| Washer repair. | 8.86 |

The theory on which the plaintiff sought recovery was that the defendant company had violated a duty owed, which duty arose from, first, a contract to furnish service and, secondly, a statutory duty imposed by the New Mexico Public Utility Act and, thirdly, a common law duty to serve. The court dismissed the count based upon the alleged common law obligation. Plaintiff's evidence in the case was to the effect that she entered into an agreement in 1934 with the gas company whereby it undertook to supply gas on a continuous basis to her home. The theory was that the company promised unconditionally to supply adequate gas for heating to her house and to do so indefinitely.

During the storm in question a gas company employee came to her house and turned off the valve and this produced this injury.

Plaintiff's testimony consisted entirely of the evidence of the plaintiff and her employees. She testified concerning the original contract undertaking and although she did not furnish a written agreement, she testified that a gas company employee had orally represented that she would receive "adequate gas and heating for all time." Following the turning off of the gas, she activated the fireplaces and set up electric heaters in order to prevent the freezing of the pipes. Other than that, her testimony consisted of a description of her special damages which are described in footnote 2 above. She finally testified that the experience left her exhausted and upset, necessitating her finally taking a vacation in Mexico City.

Her employees testified as to the efforts they made to repair the frozen pipe of the hot water heater and described also the freezing of the plants and the smoking of the walls by the fireplaces. No effort had been made,

however, to drain the hot water heater after the gas was turned off.

The defendant's evidence consisted largely of explanation as to what had brought about the condition. The field superintendent testified that the extreme cold caused field compressors and other equipment to freeze whereby transmission was interrupted. Some of this equipment was under the control of independent producers which were selling gas to the company and their wells were located at distant points. The dispatcher testified that the company made every effort to monitor the transmission process and to balance supplies so that all regions would share equally. The regional manager testified regarding the failure of certain of the pumping station compressors. He attributed this failure in part to the cold, in part to the increased demand and in part to mechanical breakdowns. He said that all available supplies were used and that industrial and other unessential users were cut down so as to provide as much as possible to residential users. The station manager for the Santa Fe area explained that the gas was turned off at certain homes including the plaintiff's as a safety precaution so as to prevent explosions when the gas was finally turned on. When sufficient gas was available, he ordered crews to turn the gas on and to relight pilot lights.

The trial court found from all the evidence that the interruption was due to circumstances which were beyond the control of the gas company and "were not reasonably foreseeable." The court further found that the storm on January 2–8, 1971, was a unique, unprecedented and unforeseeable winter storm which "was unequaled in New Mexico climatological history in both intensity and duration. The storm was not forecast with the degree of accuracy neces-

| | |
|---|---|
| Repairs to the water heater and the plaintiff's well. | 46.00 |
| Firewood, including the rental of a saw. | 26.26 |
| Meals (wasted food due to the cancelling of a party). | 65.09 |

| | |
|---|---|
| Plants which froze. | 300.00 |
| Purchase of electric heaters. | 35.34 |
| Wall cleaning. | 20.85 |
| Medical expense. | 91.27 |
| Rest and recuperation in Mexico. | 377.16 |

sary to give warning of its severity . . . ."

The court also found that the defendant and its employees "exercised reasonable care and diligence in the design, construction, installation, maintenance and operation of defendant's Northwest New Mexico system and in the furnishing of natural gas service to plaintiff."

There was evidence offered as to the temperatures during the period in question, and it was indeed cold. It was shown that out of 37 reporting stations there were 18 new record minimums, some reaching 35–45 degrees below zero. There were four lows which tied existing record lows. Within the City of Santa Fe the temperature reached –17 on January 6; –5 on January 3; –12 on January 4; –16 on January 5; and –16 on January 7. On January 8 the minimum temperature climbed to 6; 8 on January 9; and 18 on January 10. As to Santa Fe, the lows could not be regarded as record setting, for in January 1963 there was a storm in which the lows were comparable, although not quite as intense.

The meteorologist called on behalf of the defendant testified that the 1971 storm was more intense and of longer duration than any previous storm and that it was most severe in the western two-thirds of the state. One other aspect was that the storm struck suddenly.

According to the field superintendent's testimony, it was the extreme cold in the field which produced the problem, for in some areas the temperature reached as low as 40–45 degrees below zero, and this caused the oil in the compressors to congeal and made restarting them very difficult.

Plaintiff appeared to have relied on a theory of absolute liability; however, our examination of the New Mexico law seeking decisions which might sustain such a theory has failed. We have concluded that the appropriate legal theory is negligence. This was the standard which the trial court adopted.[3]

First, as to the count of the complaint which invoked the Public Utilities Laws, the trial court noted that § 68–6–2 of the New Mexico statutes requires a public utility to furnish adequate, efficient and reasonable service. This was interpreted by the court as requiring a performance which was reasonable but not absolute. We cannot say that Judge Payne was incorrect in ruling that the term "reasonable" imported a standard of reasonable care requiring the presence of fault as a prerequisite to liability.

The common law duty relied on appears also to have been based on a standard of reasonable care requiring a showing that the defendant was negligent. The appellant here argues that defendant knew or should have known that its supplies, reserves and distribution system were not adequate, and it was thereby negligent. It is true that the New Mexico law recognizes that there is a common law duty on the part of a utility to exercise reasonable care to render service to its customers. This was recognized by the New Mexico Supreme Court in Garver v. Public Service Co., 77 N.M. 262, 421 P.2d 788, 794 (1966), wherein the court said:

> The defendant also had the duty to properly maintain its lines to avoid injury or damage to others, including the plaintiffs. Its failure to comply with this duty was actionable as a common law tort. See Zamora v. Middle Rio Grande Conservancy Dist., 44 N.M. 364, 102 P.2d 673; Amber v. Cain, 110 N.W. 1053 (Iowa 1907). A public utility, like anyone else, is responsible for damages resulting from its wrongful conduct. See Crespin v. Albuquerque Gas & Elec. Co., 39 N.M. 473, 50 P.2d 259; Mares v. New Mex-

---

3. We glean this from the fact that the court discusses the case in terms of whether the company exercised reasonable care and the court's consideration of whether the circumstances surrounding the cold wave were reasonably foreseeable in its final determination that the storm was unprecedented.

ico Public Serv. Co., 42 N.M. 473, 82 P.2d 257; Southwestern Public Serv. Co. v. Artesia Alfalfa Growers' Ass'n, 67 N.M. 108, 353 P.2d 62.

This rule is in accord with that which is generally recognized. *See* 64 Am.Jur.2d § 16, at 562–63. *See also* 4 A.L.R.3d § 2, at 598.[4]

There is other evidence that New Mexico follows the negligence criterion. Thus, in Employers Casualty Co. v. Moyston, 80 N.M. 796, 461 P.2d 929 (N. M.App.1969), the court in a similar but also different context said that

[p]laintiff has no basis to complain because the gas service was shut off. The undisputed evidence is that the meter was broken, gas was escaping into the air and that this was a dangerous condition. Upon receiving notice of this condition defendant was required to exercise due care and diligence to prevent the escape of gas, usually by either repairing the defect or shutting off the flow of gas. Beal v. Southern Union Gas Co., 66 N.M. 424, 349 P.2d 337, 84 A.L.R.2d 1269 (1960).

■ We must conclude, therefore, that the plaintiff's theory that absolute liability exists for damages which result from failure of public utilities to supply the requisite quantity of fuel is unfounded. The plaintiff in such a case must prove negligence.

■ Plaintiff has an argument that the circumstances bespeak negligence; that the defendant is in a cold weather business after all and that it is expected to perform when the need is present. The judge, however, did not accept this theory. The trial court found that the plaintiff had not established a case and

it followed the positive testimony offered by the defendant in reaching this conclusion. In view of the dearth of expert testimony on the part of the plaintiff, and of the sufficiency of evidence offered by the defendant, we are not at liberty to disagree with the action taken by the trial judge. His findings are supported by the evidence.

In view of the foregoing, we do not consider that the trial court's action in dismissing the common law count constituted error, for even though it stated a claim for relief on its face, the plaintiff's evidence failed to substantiate the claim.[5]

Since we conclude that negligence was the proper gauge, the court's action in this regard was harmless.

We need not reach the question whether the court's determination that the outage was the result of an "act of God" was correct beyond observing that this characterization adds little to the analysis of the case.

In sum then, we hold that the trial court was correct in its view of the evidence and in its application of the law.

■ The evidence was equally unsatisfactory on the question of alleged breach of contract. The testimony of the plaintiff was vague as to a promise to continuously and under all circumstances furnish an adequate supply of gas.

■ Finally, plaintiff maintains that it was error to dismiss the class action at the pretrial conference without an evidentiary hearing. The court determined that the requirements of §§ (a) and (b) of Rule 23 had not been fulfilled. While it would have been better practice for the court to have held an

4. The author of the Annotation generalizes as follows:

Generally speaking, an electric power company which contracts to supply current, although not an insurer of service, has an obligation to provide a patron with adequate and continuous service, arising either from express contract, regulatory enactments, or implied contract, and the supplier is, ordinarily

at least, subject to a duty to exercise reasonable care to fulfill such obligation.

5. It would have been better practice for the trial court to have merely struck out or disregarded the allegation asserting a duty to supply gas at all times and under all circumstances.

evidentiary hearing rather than to have summarily dismissed this aspect on its own motion, we nevertheless do not see any utility in remanding on this ground. At this stage of the proceedings, after having determined that the representative case is inadequate, it would be indeed awkward for the trial judge to process the class action.

■ We note in passing that a class action does not exist merely because it is so designated by the pleadings. Cash v. Swifton Land Corp., 434 F.2d 569, 571 (6th Cir. 1970). The plaintiff has the burden of proving that the action is appropriately a class action. Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968); City of Philadelphia v. Emhart Corp., 50 F.R.D. 232, 234 (D.C.Pa. 1970); Wright & Miller, Federal Practice and Procedure § 1759, at 578–79.

■ Plaintiff Rossin did designate her pleadings as a class action, but more than that was required. She did argue in her memorandum brief, submitted to the trial court, that discovery and an evidentiary hearing should be held before the trial court could determine the maintainability of the action as a class action. However, argument by brief is not evidence. Her argument made no showing of substance or need other than the bare statement that "[p]laintiff is an individual who has arrayed herself against a large, public utility with peculiarly great resources of information regarding this action and the class for whom it was brought." Plaintiff Rossin, either in her brief or oral argument to the trial court, did not offer to show that the prerequisites of Rule 23 were satisfied. Instead, she relied upon a theory that discovery and evidentiary hearing were hers as a matter of right, without even a minimal showing of substance as to her class action claims or any substantial need. It is not surprising that the courts are not eager to develop a class action case in these circumstances. See Gosa v. Securities Investment Co., 449 F.2d 1330, 1333 n. 2 (5th Cir. 1971); Wolfson v. Solomon, 54 F. R.D. 584, 589–590 (S.D.N.Y.1972).

In holding that it would be a futile exercise to remand the case, we note that the members of the class are not barred by the trial court's action; the question was not determined on its merits. Thus, a class action on their behalf could be commenced anew.

The judgment of the district court is affirmed.