349 P.2d 337

**Dan BEAL and Mountain States Mutual Casualty Company, Plaintiffs-Appellees,**

v.

**SOUTHERN UNION GAS CO., Defendant-Appellant.**

**Donald P. RIX, Plaintiff-Appellee,**

v.

**SOUTHERN UNION GAS CO., Defendant-Appellant.**

No. 6463.

Supreme Court of New Mexico.

Feb. 8, 1960.

Gilbert, White & Gilbert, Santa Fe, Martin A. Threet, Keleher & McLeod, Robert Martin, Albuquerque, for appellant.

Smith & Kiker, Rodey, Dickason, Sloan, Akin & Robb, Charles B. Larrabee, Albuquerque, for appellees.

J. V. GALLEGOS, District Judge.

This is an appeal from two judgments entered by the district court of Bernalillo County upon jury verdicts rendered against Southern Union Gas Company, defendant-appellant, in favor of plaintiff Dan Beal in the amount of $181,520.94, and in favor of the plaintiff Donald Rix in the amount of $273,345.38. The two personal injury ac-

tions were consolidated for trial and on appeal.

At the time of the injury complained of Beal was 19 years and 10 months of age. Beal was joined as plaintiff by the Mountain States Mutual Casualty Company because of workmen's compensation which the Casualty Company had paid Beal on account of the injuries. This suit was against Southern Union, Wylie Brothers Contracting Company, Wylie Paving Company. The amended complaint stated that plaintiff Beal was employed by C & C Construction Company as a carpenter and was injured by a gas explosion while removing some forms from a concrete junction box beneath the street intersection at 47th Street and Central Avenue West, in Albuquerque, New Mexico; that Southern Union negligently allowed its gas pipes in the vicinity of the intersection mentioned to remain in a state of disrepair and that gas escaped and filtered through the ground to the junction box where it accumulated in dangerous amounts; that the gas exploded in the junction box causing Beal severe and serious permanent injuries; that the Wylie companies were engaged in work on a paving project for the City of Albuquerque and caused breaks in the gas lines in the vicinity of the explosion. The defendant Southern Union filed a third-party complaint against the City of Albuquerque, stating that the city, by its employees and agents, was engaged in placing underground pipes and other work in the vicinity of the explosion and caused a sewer line to break and allowed sewage to accumulate in the junction box and that it failed to blow out the junction box. The city filed a complaint against the C & C Construction Company which was doing the sewer work stating that Beal was employed by C & C Construction Company which had contracted to hold it harmless from all claims. The city had also pleaded that C & C Construction Company was an independent contractor.

The plaintiff Donald Rix was working for the same party and at the same place as Beal at the time of the explosion. Rix sued Southern Union Gas Company, Wylie Brothers Contracting Company and Wylie Brothers Paving Company and his complaint in respect to the claim of liability and the other pleadings in this case are in substance similar to the pleadings in the Beal case. Both Rix and Beal had been in the junction box removing forms for about an hour when one of them lit a cigarette lighter and the explosion followed. Beal suffered severe permanent injuries. Rix suffered hideous and permanent injuries which destroyed his ears, nose, arms and eyes, causing total disfigurement. He was 22 years of age at the time he was so injured with a life expectancy of 49.32 years. On motion of the City of Albuquerque, before the case was submitted to the jury, the trial court dismissed Southern Union's cross-complaint against the city. It also

dismissed the plaintiffs' complaint against Wylie Brothers Contracting Company and it also dismissed the city's complaint against C & C Construction Company.

The jury returned its verdict in favor of defendant Wylie Paving Company and in favor of the plaintiffs Beal and Rix and against Southern Union Gas Company.

· Further facts will naturally develop as this opinion is written.

█ The plaintiffs were injured in the explosion on January 31, 1955. The trial of the case was commenced on November 4, 1957, and Judge Macpherson, the trial judge, sensing that the trial would be prolonged, caused to be qualified two alternate jurors, besides the regular twelve. On the evening of November 21, seventeen days after the trial had commenced (which lasted about six weeks), the trial judge made the remark, in open court, that one juror, a Mr. Blea, was complaining of illness and on excusing the jury serving on the case for the evening, it requested the juror Blea to call him that evening after he had consulted a doctor. The juror later in the evening telephoned the judge and told him that a Dr. Tanny, M.D., had examined him and advised him that he was not physically able to continue to serve as a juror, and Mr. Blea, for those reasons, asked the judge to excuse him from further jury service. Judge Macpherson discussed the juror's condition with the doctor and was satisfied that Mr. Blea's complaints were bona fide and thereupon discharged him from jury service.

The appellant assigns as error the action of the court in discharging the juror, claiming that no notice was given its counsel prior to the action taken by the court in discharging the juror, that they should have been given a hearing before the court to have a determination made and discover whether or not there was a legal reason for discharging the juror and it arbitrarily and without lawful authority discharged the juror.

Prior to 1935 there was no provision in the statutes of the State of New Mexico for alternate jurors. In 1935 the legislature enacted Chapter 38, section 1, providing for alternate jurors which now appears as § 41–10–4, N.M.S.A.1953 Compilation. Rule 47(b) of the New Mexico District Court Rules of Civil Procedure is identical with the 1935 statute and this Rule provides:

"In any criminal or civil case, whenever in the opinion of the court the trial is likely to be a protracted one, the court may, immediately after the jury is empaneled and sworn, direct the calling of one (1) or two (2) additional jurors, to be known as 'alternate jurors.' Such jurors shall be drawn from the same source, and in the same manner, and have the same qualifications as regular jurors, and be subject to examination and challenge as

such jurors, except that each party shall be allowed one (1) peremptory challenge to each alternate juror. The alternate jurors shall take the proper oath or affirmation and shall be seated near the regular jurors with equal facilities for seeing and hearing the proceedings in the cause, and shall attend at all times upon the trial of the cause, in company with the regular jurors. They shall obey all orders and admonitions of the court, and if the regular jurors are ordered to be kept in the custody of an officer during the trial of the cause, the alternate jurors shall also be kept with the other jurors, and, except as hereinafter provided, shall be discharged upon the final submission of the cause to the jury. If, before the final submission of the cause, a regular juror dies or is discharged, the court shall order the alternate juror, if there is but one (1), to take his place in the jury box. If there are two (2) alternate jurors the court shall select one (1) by lot, who shall then take his place in the jury box. After an alternate juror is in the jury box he shall be subject to the same rules as a regular juror."

The provision of the rule which is in question under this assignment of error is that which states:

"If, before the final submission of the cause, a regular juror dies or is discharged, the court shall order the alternate juror, if there is but one (1), to take his place in the jury box. If there are two (2) alternate jurors the court shall select one (1) by lot, who shall then take his place in the jury box."

When the judge said, in open court, on November 21, that juror Blea was complaining of illness and the judge told him to consult a doctor and call him, appellant's counsel stood by in silence, neither protesting nor objecting to the method to be taken by the judge to determine the juror's illness or asking for a hearing on the matter. The next morning the court informed counsel of the juror's inability to continue on account of illness and that the doctor would not permit him to serve any further on the jury and that he had discharged the juror. Upon this announcement being made by the court, appellant's counsel asked that the case be postponed until the juror was able to serve again or in the alternative that a mistrial be granted and then asked that the trial be postponed until the following Monday to see how the juror might be. The court informed counsel that he had already discharged the juror and overruled the motion, and one of the alternate jurors was selected by lot to take the place of the juror discharged.

While the rule (47(b), supra) simply provides that if, before final submis-

sion of the case a regular juror dies or is discharged the court shall order an alternate to take his place and while we believe that the better practice is for the court of its own motion to conduct a summary hearing to determine the inability of a juror to serve before he is discharged during the trial, yet we cannot give the rule the strict construction which appellant would have us do, neither can we say that the court in this very involved and complicated case acted arbitrarily or abused his discretion in discharging the juror. It is obvious that if a juror dies there is no need for any kind of a hearing to select an alternate to take the place of the deceased juror; the rule also states as noticed "or is discharged" meaning or if the juror is discharged, and while it does not spell out the reasons why a juror may be discharged, the rule contemplates that a juror may be discharged for other causes and an alternate substituted besides substitution in case of death. We believe and hold that a juror may be discharged by the court for good cause and an alternate substituted as provided by the rule, and that good and sufficient reason was given to the trial judge for excusing the juror Blea and no error was committed by so doing; particularly in view of the facts and situation in this case that counsel, as reasonable men, were apprised and knew what probable action would be taken by the court if the doctor would refuse to permit Mr. Blea to proceed to serve as a juror, and they failed to request a hearing on the matter. In addition the trial court's action may only be set aside if he acts arbitrarily or abuses discretion in so doing.

The case of People v. Howard, 1930, 211 Cal. 322, 295 P. 333, 334, which is also reported in 71 A.L.R. 1385, supersedes an opinion on the same case reported in 289 P. 830, 70 A.L.R. 182. In this case it was held that substitution, with defendant's consent, of an alternate juror for a regular juror during the trial of a murder case, upon learning that the regular juror was prejudiced against certain of the defendant's witnesses, does not deprive defendant of a trial by jury guaranteed by the constitution, although the statute relating to alternate jurors provides for substitution only in case of death or illness of a regular juror.

The court said:

"While the circumstances of this case are not such as to bring it within the purview of section 1089 of the Penal Code providing for alternate jurors, we think the procedure by which the alternate juror was substituted in the place and stead of the regular juror was, at most, but an irregularity which in no way substantially affected the defendant's rights. In the execution of the means which the lawmakers provide to enforce the guarantees of the organic law, the end to be effected must be through the adoption

of a reasonable and practical method to secure attainable ends. When this has been done, nothing more can be demanded, from the very nature of things. It is not claimed that the verdict would have been any different had the alternate juror not participated in the deliberations of the jury. He was subject to the same challenge and took the same oath as the other jurors. We should assume that in all respects he obeyed his oath and that he well and truly tried all the matters in issue and rendered a true and impartial verdict in the cause. Defendant's right was to a fair and impartial jury, not to a jury composed of any particular individuals. People v. Durrant, 116 Cal. 179, 199, 48 P. 75. * * *"

See also State v. Leatherwood, 26 N.M. 506, 194 P. 600.

In the case of Application of Devlin, 1956, 139 Cal.App.2d 810, 294 P.2d 466, 467, the court said:

"Even in the absence of statute the trial court possesses the powers to dismiss a juror for 'good cause.' The general rule is stated as follows in 38 A.L.R. 706:

" ' * * * the general modern rule is that the court may discharge a juror without working an acquittal on the defendant, in any case where the ends of justice, under the circumstances, would otherwise be defeated * * *.' "

In State v. Dalton, 1934, 206 N.C. 507, 174 S.E. 422, 425, the North Carolina court quoted with approval from People v. Peete, 54 Cal.App. 333, 202 P. 51, 66:

"To hold, under these circumstances, that a defendant is deprived of the right to a trial by a jury of 12 simply because one of the 12 by whom the verdict is rendered may, throughout a part of the trial, have sat and listened to the evidence as an 'alternate' and not as a regular juror, would be to exalt mere form above substance. To so hold would be to leave untouched the vital springs of reality and grasp at the merest shadow of substance."

The appellant next contends that the trial court committed error in refusing its request that the plaintiffs' physical condition or injuries be shown or exposed to the prospective jurors during voir dire, particularly it was asked that plaintiff Rix be required to remove his headband and colored glasses; and that during the trial the court permitted the plaintiffs to show their injuries to the jury.

The appellant does not claim that the verdicts of the jury were excessive or as a result of passion or prejudice.

The empaneling of the jury took all of four days and the prospective jurors were

thoroughly questioned by counsel for and in behalf of all the parties. The court required plaintiffs to be present during the empaneling of the jury and they were absent only when excused for short periods of time.

Plaintiffs wore glasses and wrappings covering their heads, and Beal wore artificial ears. Rix's eyes, nose and ears are burned out; there are only two holes in the head where the eyes were. The appellant's motions during the empaneling of the jury were for a mistrial or that Rix be required to remove his headband and colored glasses and these motions were denied.

In relating the pleadings to the prospective jurors, the court used the word "hideous" as used in Rix's complaint in describing his injuries which word means and is defined as, revolting to the senses, terrifying or horribly ugly, and any person can immediately associate the word "hideous" with these meanings.

From reading the transcript it is noticeable that in the examination of the jurors on voir dire counsel were allowed great latitude and appellant's counsel were particularly emphatic in determining whether the jurors would be swayed or influenced by sympathy because of the seriousness of the plaintiffs' injuries. Judge Threet, one of the attorneys for appellant, by his clear, intelligent and all-embracing questions on the subject of sympathy left no doubt in anyone's mind of the gravity of the plaintiffs' injuries and the answers given by the jurors plainly demonstrated that they understood the seriousness of the injuries. The trial court promptly discharged any juror who stated that he or she would be influenced by sympathy and in this regard we believe it was careful and fair beyond any doubt. The general rule is that:

"The trial court is necessarily invested with a wide discretion in the superintendence of the process of empaneling the jury." State v. Burrus, 38 N.M. 462, 35 P.2d 285, 287.

It is also within the trial court's reasonable and sound discretion to permit a party to exhibit his wounds or disfigurement to the jury. After carefully considering these points we are convinced that the trial judge did not abuse discretion in his rulings and appellant's contention is without merit.

Next, appellant urges that the trial court erred in not granting its motion for a mistrial because one of the attorneys for Wylie Paving Company was in the process of handing to the court reporter three pieces of pipe for identification which had previously been brought into the courtroom. Apparently the pipes were not identified as exhibits nor tendered in evidence and what we know of them is from what transpired between counsel and the court. From this it is clear that neither plaintiffs nor their

counsel had anything to do with the pipe. It was counsel for the defendant, Wylie Paving Company, who was handling the pipe. Appellant's counsel states that the pipe was corroded and the jury might have inferred that it was the property of appellant. It appears that when the pipe was handed to the court reporter, appellant's counsel immediately approached the bench and objected to the procedure and moved for a mistrial. The trial court then excused the jury, discussion followed between court and counsel and appellant's motion for a mistrial was denied. The pipe was removed from the courtroom before the jury was returned. We fail to find any merit in this point and give here the statement of the trial court in admonishing the jury not to consider the pipe in any manner in the case and that the pipe came from private property, a tourist court, saying:

"Ladies and gentlemen, I want to make a statement concerning the three pieces of pipe which the bailiff, Henry Springer, carried over behind my bench and laid on the floor there in front of the jury box, and later, Mr. Moses handed them to the reporter. Under no circumstances will you consider those three pieces of pipe. The Court has legally rejected them as evidence in the case. However, for your enlightenment, they were taken from private property, from a tourist court on the north side of Central, at 4723 Central, Northwest. They were removed about a year and a half after the explosion. I am saying this just to thoroughly have you reject them from any possible consideration, whatever. They are not in the case, and they are not to be considered by you under any circumstances."

We consider this a sufficient admonition to the jury under the circumstances presented and cannot conceive how the jury could have been misled with reference to the pieces of pipe.

■■ The next contention made by appellant is that the trial court committed error is striking certain testimony given by a witness by the name of A. Burton Metzger called by it as a safety expert. The answer of the witness to which appellant makes objection took place on cross examination by one of plaintiffs' counsel, the question and answer being as follows:

"Q. Would it not, sir, be a poor safety practice for the utility from the lines of which the gas assumed in the question asked you by Mr. Mauney, had escaped, not to make tests in and about any underground tunnels or excavations, in which men would ordinarily work? A. Well, I would place the burden of responsibility on the people who are operating the tunnel rather than on some surrounding or

other organization, because it places the responsibility for the safety of the people working, whether it is above ground or below ground, or in the air, for that matter, directly to the supervision of those people who are employed."

There were two or three objections made to the answer, one of which was by one of the attorneys for the City of Albuquerque, stating that the answer was not responsive and that the witness was trying to determine law. At that time the court overruled the objection. On the next day, after the witness Metzger had been excused, the court stated to the jury that it was going to strike certain testimony of the witness Metzger, the court stating to the jury:

"The court has decided that I was wrong yesterday. I am going to sustain the objections, and hold that the question of the responsibility in cases of this kind is a matter for the jury to determine in this case, at least a matter of law to be ruled upon by the court, or determined by the jury. It is not a matter for any witness to decide. For that reason, the court is going to instruct the jury to disregard the answer of the witness in that case. Would the jury step out for a minute."

The appellant contends that the testimony. stricken was proper and also that the

action of the court in striking the testimony was prejudicial to it because it was done after the completion of the witness' testimony. In excusing the witness, the court made the usual statement in such cases, first asking the question if there was anything further for Mr. Metzger and then the court excused him. The record shows that this witness was an employee of the Sandia Corporation in Albuquerque and that he resided on Sandia Base and no request was made by the appellant to recall him.

Appellant claims that the answer of the witness Metzger was proper since he was an expert and cites, among other auuthority, Seal v. Blackburn Tank Truck Service, 1958, 64 N.M. 282, 327 P.2d 797, 800, where it is said:

"We therefore hold that an examining physician or an attending physician, when testifying as a medical expert, may express his opinion in percentages as to the impairment of the physical functions of the claimant * * *."

■■ We agree that the established law in this jurisdiction is that an expert may give his opinion on matters pertaining to his field which concern questions of fact, but the answer of the witness Metzger was properly objectionable because it stated that he would place the burden of responsibility on the people op-

erating the tunnel, etc. This is not an expression of an opinion on an ultimate issue of fact but is expressing an opinion on a matter of law, and it is not the function of any witness to state where the responsibility, burden or negligence is in any given case.

The general rule is cited in 20 Am.Jur. 672, § 799, "Evidence", as follows:

"It may be laid down as a general rule that a witness is never permitted to give his opinion on a question of domestic law or upon matters which involve questions of law. This rule is applicable to both expert and nonexpert witnesses. Testimony of expert witnesses is, in general, confined to matters of fact, as distinguished from matters of law * * *."

It is clear from the witness Metzger's answer that he was giving his opinion on a conclusion of law or a simple conclusion in that he stated that he would place the responsibility on the people operating the tunnel rather than on some other organization.

■ From a number of given facts an expert witness may give his opinion as to what may or could have caused a certain result. For example, a medical expert may state as an opinion that a certain wound or cut could have been inflicted by a knife or by a rock, but he cannot, even as an expert, state that a certain individual or group "is responsible" for what happened. An engineer may give his opinion from certain given facts as to what may or could have caused a bridge to collapse, but he cannot give his opinion in a case that any of the litigants "is responsible" for what happened. This is exclusively and solely a matter for the triers of the case, either the court or jury to determine.

The answer of the witness Metzger in question is obviously improper as an invasion of the province of the jury and the court. Jones on Evidence, Fifth Edition (1958), § 417, p. 787, states:

"* * * Whatever liberality may be allowed in calling for the opinions of experts or other witnesses, they must not usurp the province of the court and jury by drawing conclusions of law or determining the true facts upon which the decision of the case depends."

■ Another contention of appellant is that the trial court was in error in dismissing its third-party complaint against the city of Albuquerque, claiming that the city knew of a dangerous condition caused by the breaking of gas and water lines in the vicinity of the explosion but that it did not notify the gas company of the leak or take steps to correct it. It will be noticed that appellant, Southern Union, in its third-party complaint, sought judgment against the city of Albuquerque for

438

any sum Southern Union might be required to pay plaintiffs or for pro rata share, that is, contribution under the Uniform Tort-Feasor Act, 1953 Comp. § 24-1-11 et seq. In this complaint, issue was not joined between the plaintiffs and the city. We believe that even if the court had been in error in dismissing the appellant's third-party complaint against the city such error would not affect the verdict in favor of the plaintiffs and against the appellant, Southern Union Gas Company. In the case of Frank v. W. S. Losier & Co., 361 Pa. 272, 64 A.2d 829, 831, the plaintiff obtained a verdict against three defendants, the trial court ordered a new trial for two of the defendants and ordered that judgment be entered against the third in favor of the plaintiff. The Supreme Court of Pennsylvania, in this connection, said:

"* * * But ordinarily a plaintiff should not be compelled to lose his judgment against one defendant because other defendants may be entitled to a new trial * * *"

This court considered the problem where plaintiff obtained a verdict against two joint tort-feasors as to whether the trial court could properly grant a new trial to one defendant and permit the verdict to stand against the other in Miera v. George, 55 N.M. 535, 237 P.2d 102, 107, and there said:

"It was the rule of the common law that a verdict set aside as to one joint tort-feasor was set aside as to all. This court, however, in New Mexico & S. P. R. Co. v. Madden, 7 N.M. 215, 34 P. 50, and Union Trust Co. of New York v. Atchison, T. & S. F. R. Co., 8 N.M. 159, 42 P. 89, adopted the modern rule that the court may grant a new trial as to one of several defendants and affirm as to the others. * * *"

The appellant states in its brief that there was substantial evidence that the city knew of the dangerous condition caused by the breakage of the gas and water lines but appellant does not give us the benefit of this testimony in its brief and we could dispose of this point by what this Court said in Potter v. Wilson, 64 N.M. 211, 326 P.2d 1093, 1095:

"Where there is no evidence in the brief to support a point relied on for reversal, we can only assume that there is no such evidence in the record."

However, the evidence is that the city through its foreman, Pete Martinez, observed the leak about three days before the explosion and called it to the attention of the Southern Union Gas Company's foreman. Although there were some contradictory statements made by Martinez in his testimony, the substance is what has been stated that he did notify the Southern Union men about three days before the explosion that there was a leak, and

this testimony from Mr. Martinez was not contradicted in any manner by any witness either called by appellant or by any other party to the case.

We hold that the trial court did not err in granting the city of Albuquerque its motion to dismiss.

■ Another assignment made by the appellant is that the trial court erred in excluding opinion evidence of the witness Andrew Jarrett that he smelled the odor of sewer gas in the vicinity of the place where the explosion occurred. During the trial Jarrett was called as a witness for the plaintiffs. On cross-examination counsel for appellant, Southern Union, tendered proof that the witness had smelled fresh sewage in the area of the junction box. The court refused the tender but stated that counsel could prove that as part of his case. Immediately, appellant's counsel announced that he was calling Jarrett as his witness. This procedure was denied by the court with the statement that if that was done "we will be trying the defendants' case before we get the plaintiffs' case finished."

Cross-examination of this witness was then taken up by counsel for Wylie Paving Company and the witness testified that there was an odor of sewage at the intersection of 47th Street and Central and that he had seen sewage spill from sewer pipes in the vicinity of the explosion.

Finally the court sustained an objection to this line of testimony apparently on the theory that the witness had not qualified as an expert so that he could distinguish between gas and sewer odor. However, the court later reversed its ruling concerning the refusal of the tender of testimony by the witness Jarrett. When this was done appellant's counsel indicated that it would question this witness further but did not do so and later told the court that counsel for Wylie Paving Company had covered everything he offered to prove by his tender.

We hold that appellant waived its right to assert error in the action of the trial court in refusing its tender since, as has been seen, the court offered to permit it to submit the rejected testimony but the offer was refused.

In 89 C.J.S. Trial § 662, p. 508, the applicable statement of the law in this regard is found, wherein it is said:

"So error in excluding evidence is waived where the objection to it is withdrawn and the evidence is not reoffered, or where the court reverses its ruling and offers to permit the evidence to be introduced and the offer is declined. * * *"

In Walsh v. Parker, 41 Cal.App.2d 435, 106 P.2d 925, 929, it is said:

"As a matter of fact, the trial court reversed its ruling as to this evidence

when it permitted Dr. Ohlhoffer to testify, but appellant failed to take advantage of such reversal and, therefore, has no ground for his complaint upon that score."

The next assignment of error argued by the appellant deals with what it claims is the erroneous giving of an instruction by the court on unavoidable accident. The appellant submitted to the court an instruction on this subject which it claims was a correct one, but that the court gave its own and did not give the one requested by appellant. Appellant does not claim that he excepted or objected to the instruction given by the court and the record fails to disclose any such exception or objection by it on the instruction which was given. The appellant likewise failed to object to the refusal of the court to give its tendered instruction. This point was squarely passed upon by this Court in State v. Compton, 1953, 57 N.M. 227, 257 P.2d 915, 921, where the Court said, speaking through then Chief Justice Sadler:

"We believe the correct interpretation of Rule 70–108, supra, is that where the court has not instructed on the subject it is sufficient to preserve the error if a correct instruction is tendered. But, where the court has instructed erroneously on the subject, although a correct instruction has been tendered on the point, if it leaves it

doubtful whether the trial judge's mind was actually alerted thereby to the defect sought to be corrected by the requested instruction, the error is not preserved unless, in addition, the specific vice in the instruction given is pointed out to the trial court by proper objection thereto."

In other words, where the trial court *fails* to instruct on a certain subject, tendering of correct instruction is sufficient to preserve error, but to preserve error *where the court has given erroneous in-instruction,* specific vice must be pointed out to the trial court by proper objection thereto and correct instruction tendered.

It is only necessary to read with care Rule of Civil Procedure 51(g) and § 41–11–16 N.M.S.A.1953, in the Criminal Procedure Section, both provisions being identical; and when this is done it is very easy to agree with the conclusion arrived at in State v. Compton, supra, and there can be no escape from it, it being necessary here to quote only the first portion of the rule:

"For the preservation of any error in the charge, objection must be made or exception taken to any instruction given; * * *"

Nowhere in the rule is it stated that the tendering of a correct instruction is sufficient to preserve error to an erroneous instruction. If the court fails to instruct at all

when it should have, then tender of correct instruction is sufficient.

We therefore hold that appellant's contention with regard to the instruction mentioned must also be rejected.

■ The appellant claims error on the part of the trial court in allowing charts that showed a drop in gas pressure in its gas line system. This testimony was given by an employee of appellant who testified that the nearest pressure gauge to the point at which the explosion occurred was located in the 6500 block, West Central; that it would record accurately the pressure in the line at 47th Street. He also testified that there was a sudden drop in the pressure in the line on January 27, 1955, as recorded in the 6500 block of West Central. Although the appellant argues this point, it does not cite any authority to support its contention.

The purpose of this testimony was, no doubt, to give notice to appellant of the sudden drop in pressure and to put it on notice that there was a possibility of a break in the line, and was properly admitted. 38 C.J.S. Gas § 47, pp. 748–749; Public Utilities Corporation of Arkansas v. Cordell, 184 Ark. 878, 43 S.W.2d 746.

■ The appellant attacks the conduct of plaintiffs' counsel on some statements made by them in their closing arguments to the jury. Four or five remarks made by

three of counsel for the plaintiffs during the argument were objected to by appellant or motions for mistrial made, all of which were overruled and denied by the court.

During the voir dire examination one of the prospective jurors was asked this question:

"Q. After you have seen the plaintiffs in this case have you formed any opinion in your mind, as to the merits of this case? A. Well, I might say yes, whatever they got, it won't be worth what they lost."

One of counsel for appellant further asked this juror:

"Q. Your answer is, then, that whatever they got won't compensate them for the loss, is that what you say? A. Yes, sir."

This last answer of the prospective juror was elicited, as is noticed, by one of the attorneys for appellant. The juror was excused by the court.

During the argument of the case one of the attorneys for the plaintiff Rix made the remark:

"In the words of one of the prospective jurors who came here, 'Any amount that Mr. Rix gets will not be enough.'"

The remarks which were made by the prospective juror and which have been quoted were made after the twelve regular

jurors had been accepted and while the alternates were being qualified. Since a regular juror was excused during the trial and an alternate substituted, eleven of the twelve jurors who participated in deliberating and deciding the case had been chosen when the remarks were made. It is of interest to note that no objection or motion for mistrial or motion of any other nature was made by appellant at the time the juror made the remarks and they were let go unchallenged. The appellant does not claim on this appeal that the amounts of the verdicts are excessive or that the amounts overcompensate the plaintiffs for the injuries they received. Appellant claims that the remarks by counsel during the argument were prejudicial to it to the extent of constituting reversible error.

▉ Counsel in addressing the jury are allowed considerable latitude in their remarks and the arguments are under the supervisory control of the trial court which has wide discretion in this regard. It is for the judge, within his sound discretion, to determine if counsel has transgressed the grounds of professional duty or whether there has been prejudicial misconduct. See Griego v. Conwell, 54 N.M. 287, 222 P.2d 606; Addison v. Tessier, 62 N.M. 120, 305 P.2d 1067.

The court instructed the jury that statements and arguments of counsel are not evidence and that at no time should the jury give undue consideration to such arguments as the facts in evidence and the law given by the court should govern and be determinative in their deliberations. It further instructed the jurors that they had no right to allow their sympathies or prejudices or what might be the consequences of their verdict to affect the verdict, but that they were bound by the oath they had taken to decide the case according to the evidence as they had heard it and the law as given by the court. We very carefully considered all the remarks of plaintiffs' counsel in addressing the jury which were objected to by appellant and must agree with the trial court that they were not prejudicial.

▉ Another point raised by appellant is that the court permitted over its objection testimony to be given by the operator of Sandia Motel and a man who worked on the motel property in the moving of a neon sign farther back from the highway on January 29, 1955, two days before the explosion, the sign mover drove a pipe into the ground on the motel property to fit the sign at its new location. One day after the explosion, on February 1st, this man and a co-worker returned to continue the job of moving the sign. When the co-worker began to burn a hole in the pipe with a cutting torch a flame came up through the pipe which rose about four feet above the ground. The operator of the motel who had noticed the incident was permitted to

testify as to these facts and so was the neon sign mover permitted to testify concerning this incident. The appellant claims that it was improper to permit this testimony given in behalf of the plaintiffs because the incident took place on private property. We find no merit to this contention.

It is true that a gas company is not liable for leaks which develop on private property when it has no control over such pipes, McMurdo v. Southern Union Gas Co., 56 N.M. 672, 248 P.2d 668, 670, but the evidence submitted was proper as a circumstance tending to show negligence on the part of appellant since the operator of the motel had given notice to it prior to the explosion that she had observed odors of natural gas around the motel and appellant failed to make proper investigation to determine the source of the odor or the source of the leak. The operator of the motel testified that she called the gas company during the time that she was smelling the gas odor and was told they were too busy and to call a plumber because it was on private property. However, the gas company did send a man who checked it and then told this witness to call a plumber; that she did call a plumber who checked all the units underneath the floor furnaces and the pilot lights and from this examination the plumber could not determine the source of the leak.

The applicable law in this regard is:

"Where gas company has notice of defect or break in the service line, whether its own or the customer's line, it must exerise due care and diligence to prevent the escape of gas, usually by either repairing the defect or shutting off the flow of gas." 26 A.L.R. 2d 150.

McMurdo v. Southern Union Gas Co., supra, was an action against Southern Union Gas Company for the death of two people who it was claimed were asphyxiated by gas furnished by the defendant for heating and cooking purposes. In this case the deceased were found one morning in a small room used by them in which an unvented open-type gas heater was burning, with the doors and windows closed. The verdict in that case was for the defendant, Southern Union Gas Company, and on appeal the Supreme Court affirmed and stated the rule that was applicable to that case. It was stated that the authorities generally hold that a gas company which does not install, own or control pipes and appliances in a customer's building is not responsible for the condition in which they are maintained, the evidence having shown in that case that the type of heater used by the deceased became a dangerous agency only when not properly maintained. Negligence had been predicated in that case upon breach of duty, that is, the supplying of gas to a residence with knowledge of

defective pipes or appliances. The Supreme Court said:

"On that issue the court properly charged the jury that if the company had knowledge that the appliances used by J. B. Callahan (one of the deceased) were defective and thereafter supplied his residence with gas, which was the proximate cause of the injuries, its verdict should be for appellant (plaintiff)."

Appellant further contends that the court erred in refusing certain of its tendered instructions and in giving others to which it objected and it also claims that assuming that none of the errors complained of by appellant when considered separately is sufficient in itself to require reversal, that when these alleged errors are considered together their cumulative effect is reversible error. We have carefully considered this point as well as all of the requested instructions which were rejected and the objections made to those given by the court to which objection was made. We have considered all the points raised by the appellant upon which it claims reversible error and find that the trial court properly and completely instructed the jury on all issues of the case and that it did not err in refusing the appellant's tendered instructions which it refused and further that it did not err in the instructions given which were objected to, and having considered all points raised by appellant we are of the opinion that there is no reversible error in the record of this case. Since we find no error in the record, it is unnecessary to consider the motions to dismiss appeal filed by Wylie Paving Company and Wylie Brothers Contracting Company.

After considering the nature of this case, the necessary time involved in trying it, the fact that very competent and able attorneys represented all the parties, the numerous rulings the court had to make, the mass of testimony as evidenced by the voluminous transcript (some twenty volumes), we believe that it is not amiss to say that the learned and capable trial judge conducted the trial with patience and complete fairness to all the parties and counsel in the case. We find the record free from error and the judgments entered by the trial court are affirmed.

It is so ordered.

McGHEE, C. J., and COMPTON and CARMODY, JJ., concur.

MOISE, J., not participating.