384 P.2d 256

**Saradan HANBERRY and Travelers Insurance Company, a corporation, Plaintiffs-Appellees,**

**v.**

**A. P. FITZGERALD, George Anderman and P. P. Glasebrook d/b/a Albuquerque Bus Company, and Jessie W. Harris, Defendants-Appellants.**

No. 7190.

Supreme Court of New Mexico.

May 20, 1963.

Rehearing Denied Aug. 26, 1963.

Merritt W. Oldaker, Roy F. Miller, Jr., William H. Oldaker, Albuquerque, for appellants.

Arturo G. Ortega, Albuquerque, for appellee Saradan Hanberry.

Rodey, Dickason, Sloan, Akin & Robb, Charles B. Larrabee, Albuquerque, for appellee Travelers Insurance Company.

CARMODY, Justice.

This is an appeal from a jury verdict and judgment thereon, in favor of the plaintiff below, arising out of an automobile-bus collision in which the plaintiff suffered severe injuries.

The errors asserted consist of abuse of discretion in the admission of certain testimony, the failure to grant motions to direct a verdict and to amend, the giving of and refusal to give certain instructions, and the claim that the verdict is excessive, requiring a remittitur or a new trial.

The interests of Miss Hanberry and Travelers Insurance Company are common, inasmuch as Travelers is the insurance carrier of Miss Hanberry's employer and was awarded reimbursement for money paid under the workmen's compensation act. There is no contest regarding the right to reimbursement; so, for clarity, the parties will be referred to as they appeared below, the plaintiff in the singular, so also the defendant, even though the bus company and the driver Harris are separately named as defendants.

The accident occurred on a rainy night, shortly after 9:30, on a paved street in Albuquerque, New Mexico. Plaintiff's car and defendant's bus collided on a moderate S-curve, about midway between two intersecting streets. The vehicles were traveling in opposite directions and the left rear of the bus struck the left front of the car.

The point of impact was on the plaintiff's side of the center line of the street. The speed of the vehicles, their location on the street, and whether the bus was skidding, were highly controverted questions.

The trial lasted some six days, during which both the liability question and the personal-injury, or damage, questions were about equally hard-fought. Plaintiff's injury was principally a fractured dislocation of the left hip joint. She had to undergo some four operations, culminating in a hip fusion, and during a part of her long hospitalization, she developed a thrombophlebitis, which was no longer active after the fusion. However, about nine months before the trial (which actually took place a little more than four years after the accident), plaintiff developed an ulcer near her left ankle, caused by the thrombophlebitis. Although it was recommended by specialists that she undergo yet another operation to strip and tie the varicose veins and have a skin graft in the ulcerated area, she refused to do this, preferring to be treated, while hospitalized, by a general practitioner who utilized a conservative treatment in clearing up the infection.

At the time of trial, the plaintiff was still using crutches, because of weakness resulting from her almost five-months' stay in the hospital for the treatment of the ulcer.

The jury rendered its verdict, awarding the plaintiff $199,000.00 and Travelers $17,910.20.

Defendant relies upon ten separate points for reversal, in all but three of which the contention is made, directly or indirectly, that the amount of the verdict was influenced by sympathy, passion and prejudice. Actually, one of defendant's separate points is specifically directed to this issue, and we will consider this point separately after otherwise disposing of defendant's remaining contentions.

■ The first, second and third points relied upon for reversal relate to a claimed abuse of discretion on the part of the trial court, and defendant bears a heavy burden, in view of the long-standing rule that we will not overturn the action of the trial court absent a patent abuse or manifest error in the exercise of the discretion. See, State ex rel. Meyers Co. v. Raynolds, 1917, 22 N.M. 473, 164 P. 830; Martinez v. Cook, 1953, 57 N.M. 263, 258 P.2d 375; In re Stern's Will, 1956, 61 N.M. 446, 301 P.2d 1094; Coastal Plains Oil Co. v. Douglas, 1961, 69 N.M. 68, 364 P.2d 131. With this rule in mind, therefore, we consider the three points somewhat together.

■ In the first place, defendant urges that Dr. Rivas, the general practitioner who cared for plaintiff due to the ulcerated condition of her leg shortly before trial, should not have been allowed to testify to the proper medical treatment and what was or was not recognized as proper medical procedure in connection therewith. The testimony was admitted over objection, after the doctor had testified that he was not actually qualified in the field of circulatory ailments, known as vascular diseases. The doctor, however, was regularly licensed to practice medicine. The whole problem related to what was the proper treatment for plaintiff's condition. The gist of defendant's claim is that there were two other doctors who were qualified as experts in vascular diseases, and that, therefore, the court should have refused to allow the testimony of Dr. Rivas on the subject.

Defendant draws too fine a line; as long as Dr. Rivas was a qualified medical expert, we do not feel that it is a matter for the court to rule out his testimony as to a particular specialty within the general broad field, but it is rather a question of the weight, if any, to be given the expert testimony as determined by the jury under proper instructions from the court. Los Alamos Medical Center v. Coe, 1954, 58 N.M. 686, 275 P.2d 175, 50 A.L.R.2d 1033; Hamilton v. Doty, 1958, 65 N.M. 270, 335 P.2d 1067; Beal v. Southern Union Gas Co., 1960, 66 N.M. 424, 349 P.2d 337, 84 A.L.R. 2d 1269; Landers v. Atchison, Topeka & Santa Fe Railway Co., 1961, 68 N.M. 130, 359 P.2d 522; Yates v. Matthews, 1963, 71 N.M. 451, 379 P.2d 441.

■ Defendant's second point related, in part, to the testimony of Dr. Rivas and is based upon the following circumstances: Some twenty-one close-up colored photographs were taken of plaintiff's ankle. These pictures covered the period from May 4, 1961, to September 20, 1961, and it is claimed that, by sheer numbers, they were inclined to prejudice the jury.

Although we are inclined to agree that allowing so many almost-identical pictures in evidence could have very little value except to arouse the sympathy of the jury, we would not, upon the basis of the number of pictures alone, be inclined to direct a reversal. We, however, would caution the trial courts that such practice is a dangerous one, and the trial judges should exercise considerable care in order to prevent possible prejudice.

■ As a part of this claim of error, the defendant also objects to a demonstration which occurred in court when Dr. Rivas removed the elastic stocking which the plaintiff was required to wear, to show the ulcerated area and also to demonstrate the difficulty plaintiff had in removing and putting on the elastic stocking. We see no particular abuse in this respect, unless it is considered that this demonstration was of no actual aid to the jury in an evidentiary sense and was impliedly only for the purpose of arousing sympathy. Compare Beal v. Southern Union Gas Co., supra.

Defendant's third point, which, as stated, also involved the discretion of the trial court, had to do with testimony introduced through a former police officer who specialized in testimony as an expert on speed. In this instance, the defendant's argument goes not only to the qualifications of the expert, but also to the claimed fact that his final conclusion of the speed of the bus was not warranted under his own testimony. With respect to his qualifications, there was no abuse of discretion on the part of the court. The other facet of the argument, however, requires a consideration of a part of the witness's testimony.

■ It is claimed by the defendant that the witness did not know whether the bus was skidding at an angle, and, not knowing about this factor, he could not form an opinion as to the speed. A careful examination of the testimony, however, convinces us that defendant places undue emphasis upon certain answers made by the witness, without considering the testimony as a whole. As we view the witness's testimony, he arrived at his determination of speed on the theory that the wheeels of the bus were locked, and that, therefore, based upon the skid marks, it was immaterial whether the bus was skidding sideways or traveling in a normal direction. When the testimony is viewed in this light, we see no abuse of discretion on the part of the court in permitting his estimate of speed, nor were there any matters considered by the

so-called expert which were not properly before the jury by way of evidence. Landers v. Atchison, Topeka & Santa Fe Railway Co., supra.

This particular witness's testimony is also brought into question, because the defendant claims that the court, in giving its unavoidable-accident instruction, stated as a part thereof that the unavoidable-accident doctrine would not apply if they found that the bus driver was driving in excess of twenty-five miles per hour, inasmuch as this would be negligence.

There is no merit to this claim of error, because, as we have heretofore said, the testimony was admissible, and, besides, there was other competent testimony regarding speed which would support the reference to it in the instruction.

Therefore, as to defendant's first three points, these were matters within the discretion of the trial court, and such discretion will not be disturbed, except to the extent that we feel the matter must be considered under our consideration of the defendant's claimed error of the excessive verdict, which will be hereafter discussed by us.

■ Defendant's fourth point argues that the trial court erred in refusing to direct a verdict for the defendants at the close of the plaintiff's case in chief, on the ground that the evidence showed the plaintiff was contributorily negligent. We have

carefully examined the lengthy transcript and, without going into detail, it would appear that, viewing the evidence together with logical inferences therefrom in the light most favorable to the plaintiff, the trial court's denial of the motion was proper. Under the evidence, there were fact questions to be passed upon by the jury, and it would have been improper for the trial court to remove the case from their consideration. Landers v. Atchison, Topeka & Santa Fe Railway Co., supra.

As a fifth point, defendant declares that the trial court erred in refusing to allow a trial amendment to permit the defendant to allege "last clear chance," and in refusing requested instructions on the subject.

■■ With respect to this, the defendant's brief is deficient in failing to cite any evidence to indicate that the plaintiff had time to take any action to avoid the collision. One of the elements required to warrant the application of the last clear chance doctrine is that the party knew, or should have known, of the other party's peril. It would have been sheer speculation, although defendant contends it was apparent under the physical facts, for the court or the jury to have determined that the plaintiff knew of the peril of the bus driver. Compare Merrill v. Stringer, 1954, 58 N.M. 372, 271 P.2d 405. In addition, last clear chance does not mean the last possible chance, which is about what is contended

for by the defendant. See, McMinn v. Thompson, 1956, 61 N.M. 387, 301 P.2d 326. There was no showing in the evidence whatsoever that Miss Hanberry had an opportunity to know of the perilous situation in which the bus found itself, in time to take any action to avoid the accident. Sanchez v. Gomez, 1953, 57 N.M. 383, 259 P.2d 346; State ex rel. State Highway Commission v. Davis, 1958, 64 N.M. 399, 329 P.2d 422, wherein this court approved of language attributed to 4 (Part 2) Blashfield, Cyclopedia of Automobile Law & Practice, ch. 77, where it was said, in part:

"* * * where the peril and the accident occur almost simultaneously, the doctrine is not applicable."

Finally, with respect to this point of alleged error, the defendant argues that last clear chance is available to either party to a case, not just the plaintiff. In view of our ruling that the facts did not warrant allowing the amendment or giving an instruction, there is no necessity in our ruling on this issue.

■ The defendant's sixth ground of reversal relates to the denial of a so-called "sudden peril" instruction. Without setting out the instruction, it is obvious from reading the requested instruction that it is deficient because it fails to include the necessary clause, "who without negligence on his part." Laying aside further analysis, this deficiency alone would justify the trial

court in refusing to grant the instruction. It should also be added, however, that this theory of the case is amply covered by other instructions given by the court, and even if the instruction had been proper, we do not feel it would have been error to refuse it.

■ The defendant next claims error because the court gave its instruction No. 22, which was to the effect that if the emergency was caused by the negligence of the driver, then the "sudden emergency" doctrine does not apply. The particular instruction objected to directly followed two others on the doctrine of sudden emergency. The two preceding instructions were somewhat lengthy, and although one used "without negligence on his part" and the other stated "through no fault of his own," still these two phrases were somewhat buried in those other two instructions and we do not feel that there was any undue emphasis of the driver's possible negligence placed by the court in giving the controverted instruction. It merely clarified what had been said before (Frei v. Brownlee, 1952, 56 N.M. 677, 248 P.2d 671), and when the instructions are read as a whole, we do not deem that there was any prejudice.

The eighth point of error relates to the claimed excessive verdict, and we will discuss the same after disposing of defendant's other points of error.

The ninth point has to do with the claim that the bill from the Belen Hospital, where

plaintiff was hospitalized for almost five months due to the ulcerated condition of her ankle, was error. The bill was offered on one occasion, objected to, and the offer not pressed; then later, after the testimony of the plaintiff and the doctor, the following occurred:

"MR. ORTEGA: At this time, your honor, we offer in evidence plaintiff's exhibit 1, the hospital bill of the Belen General Hospital. I believe there has been enough foundation laid from the standpoint of its reasonableness and from the standpoint of the reasonable need for this hospitalization.

"MR. MILLER: In view of the Supreme Court's declaration in Atlas Building Products case, we object to it on the ground that no proper foundation has been laid.

"THE COURT: It will be admitted. * * *"

The case referred to is Sapp v. Atlas Building Products Company, 1957, 62 N.M. 239, 308 P.2d 213, which also related to hospital bills.

 In Sapp. although it does not appear from the opinion of the court, the objection was that there was no proper foundation, under the Business Records Act, that the hospital records and charges were made in the regular course of business. We held that the records were not admissible under the facts there shown.

Other than the testimony of the doctor as to the need and reasonableness of the hospitalization, the facts in this case and in Sapp are very similar. There was no showing that the hospital bill was kept in the regular course of business. True, counsel could have been more specific in his objection, but we believe that enough was stated to alert the mind of the court, at least to warrant inquiry as to the holding in Sapp. Although objections must be specific so as to advise the court of the nature of the claimed error, it cannot be expected that every objection must state with particularity each and every element involved. See also Alvarado M. & M. Co. v. Warnock, 1919, 25 N.M. 694, 187 P. 542; Mares v. New Mexico Public Service Co., 1938, 42 N.M. 473 at 494, 82 P.2d 257; Mitchell v. Allison, 1949, 54 N.M. 56, 213 P.2d 231. It follows that the trial court erred in allowing the admission of the hospital bill, and the verdict of the jury in favor of Travelers is erroneous to the extent of $4,375.40.

 The tenth point, contending error on the part of the trial court, relates to the court's refusal to sustain certain objections to the costs praecipe. It appears from the record that the trial court has entered an order as to the costs claimed by plaintiff Travelers, but has not entered an order regarding the costs of plaintiff Hanberry. Inasmuch as it is going to be necessary that further proceedings in this cause be had in the district court, we decline to pass upon

this claim of error, other than to say that defendant cannot seriously contest the allowance of two filing fees and two services of process, when there were two separate and distinct cases initially filed, even though they were subsequently consolidated for all purposes. At such time as the costs are finally taxed, the trial court's attention is directed to § 20–1–4, N.M.S.A.1953 (Supp. 1961), particularly insofar as it relates to the limitation of expert witness fees which may be allowed, and the provisions of § 25–1–9, N.M.S.A.1953, providing for the certification by the court in the event attendance of more than four witnesses is necessary.

Defendant's point of error No. 8 is the most serious point of dispute between the parties. Defendant claims that the verdict appears to have been given under the influence of sympathy, passion and prejudice. As sub-points, it also claims that the verdict was grossly excessive, is speculative and conjectural, that the jury disregarded certain of the court's instructions, and that the court committed error in giving other instructions on the measure of damages. However, as we have noted, throughout the entire brief in chief of the defendant and also in its reply brief, constant references are made to the verdict as having been influenced by sympathy, passion and prejudice. In addition, such references are particularly evident in defendant's points 1 and 2, but they also appear in most of the other points argued by counsel.

Except for the Belen Hospital bill, there is no question concerning the award to Travelers, this sum being for workmen's compensation payments made to plaintiff Hanberry and for medical and hospital expenses incurred as a result of the accident. However, the award of $199,000.00 to the plaintiff Hanberry is, to us, after a careful review of the evidence, so extremely excessive that it is not truly supported by the evidence and therefore must indicate that the jury was mistaken in the measure of damages. See, Vivian v. Atchison, Topeka and Santa Fe Railway Co., 1961, 69 N.M. 6, 363 P.2d 620; Hall v. Stiles, 1953, 57 N.M. 281, 258 P.2d 386; Montgomery v. Vigil, 1958, 65 N.M. 107, 332 P.2d 1023; and Jackson v. Southwestern Public Service Company, 1960, 66 N.M. 458, 349 P.2d 1029. As we said in Vivian, supra, the amount of damages is primarily a question for the jury, but where it appears that the verdict is extremely excessive, the court may impose a restraint upon the jury. This will not be done upon light or arbitrary grounds, and the action is not so taken in this case.

Although the plaintiff suffered severe and extremely painful injuries, the evidence in its most favorable aspect tended to show that her loss of earning capacity, both past and future, was the sum of approximately $23,000.00. Her earning capacity, although perhaps reduced because of the hip fusion

and the fact that she must rest periodically, is still quite adequate. She is in no sense completely disabled and in many respects able to do her normal work. There was no claim nor evidence upon which the jury could base future medical expenses. Therefore, the verdict must of necessity have granted to the plaintiff the sum of $176,000.-00 for pain and suffering alone. Although, of course, we cannot put a value upon pain and suffering, we cannot but feel that such an amount is grossly excessive in the instant case. What led the jury into this error we do not know, but it is to be doubted, if there had been an individual defendant solely responsible, that such a large amount would have been awarded. We would also observe that the admission of various items of evidence, including the inordinate number of photographic exhibits showing the condition of the ulcer, although perhaps properly admitted, had, from an evidentiary standpoint, the principal effect of unduly stressing the pain and suffering endured by the plaintiff. Such over-emphasis in proving relatively minor details could very possibly have resulted in causing the jury to ignore the proper measure of damages.

In this connection, also, the defendant claims that one of the instructions given by the court that the defendant, if found liable, would also be responsible for subsequent injuries which would not have occurred if the plaintiff's bodily efficiency had not been impaired by the accident, was error. As applied to this case, this instruction obviously has reference to the ulcerated condition which has been mentioned previously, and could only have been construed in this manner by the jury. Therefore, without determining whether such a general statement is true in all cases, at least as applied to the facts here the instruction was proper.

Although there can be no true comparison drawn between this and any other case which has been brought to our attention, we know of only one case in this jurisdiction in which a verdict anywhere near approximating the amount of the award here has been approved. In Beal v. Southern Union Gas Co., 1960, 66 N.M. 424, 349 P.2d 337, 84 A.L.R.2d 1269, a somewhat larger verdict was sustained, for injuries which totally and permanently disabled an individual and so maimed him that he was a hideous sight to observe. The Beal case is not even analogous to the instant case. There are others involving the loss of limbs in which the pain and suffering were enormous, where we saw fit to grant a remittitur to a figure which the court thought reasonable under the evidence. See, for example, Jackson v. Southwestern Public Service Company, supra.

In any event, it is our considered judgment that, in the light of the usual tests adopted not only by us but by appellate courts generally, the present verdict of $199,000.00 is excessive in the sum of $124,-

000.00. Even though it is argued by defendant that the very size of the verdict casts some doubt upon the validity of the entire jury verdict, we find nothing in the record that the finding by the jury as to liability on the part of the defendant was in any way affected by passion, prejudice, bias or sympathy. Compare, Baros v. Kazmierczwk, 1961, 68 N.M. 421, 362 P.2d 798; and Vivian v. Atchison, Topeka & Santa Fe Railway Co., 1961, 69 N.M. 6, 363 P.2d 620. We see no reason in directing a remittitur or to alternatively remand the case for a new trial on all of the issues—the actual amount of plaintiff's damages is all that remains to be determined. Therefore, we will direct that if the plaintiff Hanberry will file a remittitur with the clerk of this court within ten days of the issuance of the mandate herein, in the sum of $124,000.00, the judgment will be affirmed in favor of the plaintiff Hanberry for the sum of $75,-000.00; otherwise, the judgment will be reversed and the cause remanded for a new trial, on the issue of damages only.

As to plaintiff Travelers, we direct that it file with the clerk of this court within ten days from the issuance of the mandate herein a remittitur in the sum of $4,375.40, or, if refused, that the cause be remanded as to this plaintiff for a new trial, on the issue of damages only.

In order that the record may be corrected as to the costs in the trial court, it will be further directed that the cause be remanded to the trial court for final computation of costs immediately after the filing of the remittiturs hereinabove mentioned, if they, or either of them, are so filed.

Costs of the appeal will be assessed against the defendant-appellant, in the event the remittitur is accepted by plaintiff Hanberry, but not otherwise.

It is so ordered.

CHAVEZ and NOBLE, JJ., concur.