253 P.2d 312

**BOYDSTON et al. v. TWADDELL.**

No. 5548.

Supreme Court of New Mexico.

Jan. 28, 1953.

H. O. Robertson, Silver City, I. M. Smalley, Deming, Seth & Montgomery, Santa Fe, for appellant.

Sherman & Hughes, Deming, for appellees.

McGHEE, Justice.

The plaintiffs and defendants, J. J. Twaddell and Catherine Mims, were involved in a three-way intersectional collision at Spruce and Lead Streets in the City of Deming. The plaintiffs brought this action to recover damages for injuries to their persons and to the pickup truck owned and driven by the plaintiff, Chester B. Boydston. The case was tried to a jury and from a verdict in favor of the plaintiffs, only the defendant Twaddell appeals, who is hereafter referred to as the defendant.

The collision occurred in the following manner: On April 16, 1951, at a time be-

tween 1:00 and 1:30 in the afternoon, the defendant was driving his Buick automobile east on Spruce Street, which street is an arterial highway (U. S. Highway 70-80) running generally east and west through Deming. On Lead Street, which runs generally north and south, Catherine Mims was driving her Oldsmobile coupe north, approaching the intersection of Spruce and Lead Streets. Although Spruce Street is designated as a through street, there were no stop signs at the intersection with Lead Street. When the car driven by the defendant had just passed the center line of the intersection with Lead Street, it was struck by the Mims car and caused to swerve into the left or north lane of travel on Spruce Street, where it struck the Ford pickup truck driven by Boydston, in which the plaintiff Uzueta was riding.

The parties are in dispute as to whether the Mims automobile struck that driven by the defendant; but, in view of the fact the defendant's car was damaged at the right front door, frame and seat, and the Mims automobile was damaged in front, it is apparent the Mims car did in fact strike the defendant's car. There is also controversy about whether the defendant swerved his car into the north or left lane of travel on Spruce Street, but from all of the evidence and the physical facts, it seems more likely his car was propelled into such left lane by the force of the blow from the Mims car.

Considerable is said in the testimony and argued in the briefs of the parties about the speed of the three vehicles. While there is some evidence the defendant was driving in excess of the lawful speed limit (25 miles per hour), a disinterested witness whose car followed his car down Spruce Street estimated she was two or three car lengths behind him, and traveling at the rate of 20 to 25 miles an hour. The plaintiff Boydston's car was not going in excess of 20 miles per hour. Catherine Mims testified she was going 15 miles an hour, but her testimony is controverted.

The defendant contends on this appeal that there is not sufficient evidence to support the verdict of the jury and that the uncontroverted physical facts show he was not negligent. The plaintiffs in support of the judgment in their favor declare the jury was warranted in finding the defendant negligent in three particulars: (1) In driving at an excessive and unlawful rate of speed; (2) In swerving into the north lane of traffic; and (3) In failing to exercise due care in avoiding a collision with other vehicles entering said intersection from cross-streets.

While there is scant evidence the defendant was traveling at an unlawful or excessive rate of speed, or that the swerving into the north lane of travel in the path of the plaintiff Boydston's oncoming car was volitional, our examination of the

record discloses substantial evidence upon which the jury could have found the defendant failed to exercise due care to avoid the collision by not keeping a proper lookout.

The defendant testified he looked both to the right and left when he entered the intersection and didn't see anybody, and that he looked again after entering the intersection and saw the grill of a car 10 or 15 feet away from him, coming fast. The witness, Mrs. Pringle, who traveled behind the defendant for a few blocks at a distance of some two to three car lengths from him, testified she saw the Mims car approaching the intersection and that it was going too fast to stop. She described the intersection as a clear crossing and stated there was nothing to obscure the defendant's vision of the approach of the Mims car. A state policeman, John Bradford, testified the southwest lot immediately adjacent to Spruce and Lead Streets was entirely vacant with the exception of a frame building in the center which would only momentarily obscure the vision of cars going north on Lead Street. The defendant himself testified he could have looked to his right for cars approaching the intersection on Lead Street at the middle of the block on Spruce Street, but that he looked for the first time when he got to the intersection. The day was clear and the streets were dry.

There can be no doubt that a motorist traveling on an arterial highway or through street is nevertheless under a duty to keep a proper lookout for vehicles approaching on cross-streets, and it is his duty to avoid injury to himself and others when he is, or in the exercise of reasonable care should be, apprised of circumstances which indicate there will be a collision unless he does what he can to avert it. The duty is equally present when he could have recognized such circumstances had he looked, or if he looked, had he actually observed and recognized the danger. 2 Blashfield, Cyclopedia of Automobile Law and Practice (Perm.Ed.) Secs. 1024, 1028, 1032, at p. 334, and 1037; 4 Shearman & Redfield on Negligence (Rev.Ed.) Sec. 714, beginning p. 1658. For collection of illustrative cases, see 24 N.C.C.A. (N.S.) pp. 397–402 (Lookout); 4 N.C.C.A. (N.S.) pp. 370–379 (Failure to Maintain Lookout); 37 N.C.C.A. p. 31–37 and 33 N.C.C.A. p. 425–427 (Liability of favored driver).

In Langenegger v. McNally, 1946, 50 N. M. 96, 171 P.2d 316, 318, judgment for the defendant was affirmed on the ground of contributory negligence where the plaintiff, who had the right of way, collided with the defendant. We there quoted the following sections from 2 Blashfield, op. cit. supra:

"§ 1024. 'The right (of way) so given is not exclusive, but instead is at all times relative and subject to

the fundamental common-law doctrine that he should exercise the right so as to avoid injury to himself or others.'

"§ 1027. 'Where two persons are driving on lines that visibly intersect, the general obligation of ordinary care becomes for each a definite duty, and if, as they approach, their contiguity and mutual movements should suggest a probable or even possible collision, neither is entitled to act on the assumption that the other will give way. * * * And a motorist, although in a favored position in approaching an intersection, must exercise reasonable care to avoid a collision after he becomes, or in the exercise of reasonable care may become, aware that an automobile coming from intersecting street is not going to yield the right of way.' "

Similarly, in Crocker v. Johnston, 1939, 43 N.M. 469, 95 P.2d 214, 218, we said:

"We do not overlook the important fact that the car of defendant was at the time proceeding in the favored direction. But the right of way of one proceeding in the favored direction is not absolute.

"This right of way has been said to be a rule of doubt under balanced conditions. The person having the right of way is nevertheless enjoined to exercise all reasonable care and maintain proper look-out, to remain alert and with his car under control. * * *"

But the defendant's position is that although he recognizes the correctness of the general principles above stated, the fact that Mrs. Pringle saw the Mims automobile coming to the intersection too rapidly to stop is no proof that he should have seen it in the absence of a showing of how far the Mims car was from the intersection when seen by Mrs. Pringle; that the verdict of the jury could only have been based on surmise or conjecture. His position is considerably weakened, however, by his own testimony that he could have looked in the direction of the Mims car when he was as far away from the intersection as half a block. The testimony presented raised a question for the jury and their resolution of the issues in favor of the plaintiffs against the defendant is supported by substantial evidence.

The defendant also contends it was error for the trial court to refuse to grant him a new trial on the basis the damages awarded by the jury were excessive.

The damages sustained by the plaintiff Boydston may be summarized as follows: His 1936 Ford pickup truck was demolished. Before the accident it had a resale value of $150. After the accident he paid $15 to have it hauled away as junk. Its value as junk, if any, was not disclosed. He sustained three fractured ribs, a bruised nose

with crushed cartilage, laceration of the lip, some injury to face and legs which did not require medical treatment, and mild shock. He was hospitalized three or four days. His chest was taped and he was given anesthetic injections in the chest region for relief of pain; his nose was dressed and he was under the care of a doctor for approximately a month. He was employed as caretaker for a country club in Deming and missed one week's work as the result of his injuries. It was not established what his weekly wage was. He suffered "a little pain" for a month and had no permanent disability as a result of his injuries. He was awarded $4,500 compensatory damages.

■ While these injuries are in no sense trivial, still we feel the award received by Boydston is excessive and should be reduced to $1,500.

The injuries to the plaintiff Uzueta, as summarized, are: Shock and pain in neck on arrival at hospital; compression fracture of fifth cervical vertebra, with no displacement and no damage to the spinal cord; fractured jaw on left side; deep laceration on undersurface of chin; amputation of little finger on right hand at middle joint. He wore a cast on his neck for eight weeks and a felt collar thereafter for another four weeks. His jaw was wired for approximately a month and a half. After the removal of the wire Uzueta was unable to open his mouth for four weeks. He ate nothing but liquids through a tube for seven weeks. He was in the hospital night and day for one week, and for a second week was there at night. He was employed as a janitor earning $25 weekly, and missed eight weeks' work. He suffered no permanent disability except for the loss of his little finger and mild pain in muscles of his neck on extreme movement.

■ The jury assessed his damages for medical and hospital care and loss of earnings at $700.60. He was, in addition, awarded $7,500 compensatory damages Again we view the amount of damages awarded in compensation as excessive and the total damages awarded to Uzueta should be reduced to the sum of $5,700.60.

The judgment of the trial court will be affirmed on condition the plaintiffs shall file with the clerk of this court within fifteen days hereafter a remittitur of the sums fixed by this court as excessive damages: $3,000 in the case of the plaintiff Boydston, and $2,500 for the plaintiff Uzueta.

In the event such remittiturs are not so filed, the cause shall be remanded to the lower court with direction to grant the defendant Twaddell a new trial as to the plaintiff or plaintiffs not filing a remittitur on all questions.

As the defendant Mims did not appeal the judgment against her must stand.

The costs of the appeal will be assessed against the defendant Twaddell.

It is so ordered.

SADLER, C. J., and COMPTON, COORS and LUJAN, JJ., concur.