332 P.2d 1023

Katherine MONTGOMERY, a minor, by her father and next friend, Harry Montgomery, Plaintiff-Appellee,

v.

Vincent VIGIL and Ann E. Vigil, a minor, Defendants-Appellants.

No. 6304.

Supreme Court of New Mexico.

Dec. 12, 1958.

Iden & Johnson, W. F. Kitts, Albuquerque, for appellants.

Lorenzo A. Chavez, Arturo G. Ortega, Albuquerque, for appellee.

J. R. Wrinkle, Silver City, Joseph L. Smith, McAtee, Toulouse & Marchiondo; Albuquerque, Tibo Chavez, Dennis Cowper, Belen, amici curiae.

PER CURIAM.

After considering the appellee's second motion for rehearing, we withdraw our former opinions filed in this case and substitute the following in lieu thereof.

` SHILLINGLAW, Justice.

This appeal is from a judgment in the amount of $5,000 in favor of the plaintiff below as the result of injuries suffered by her in an automobile accident between a car in which she was a passenger and a car owned by the defendant, Vincent Vigil, and being operated by the defendant, Ann Vigil, his daughter. The accident occurred in the city of Albuquerque at approximately 2:30 p.m. on June 13, 1956. As a result of the impact of the two automobiles, the plaintiff, Katherine Montgomery, a girl of thirteen years, was thrown against the dashboard resulting in injuries to her nose and adjacent areas of her face.

The sole question raised by the appellants on this appeal is that of the excessiveness of the damages. The sole basis for damages is pain and suffering and such disfigurement as she may have sustained. No consideration need be given to damages for medical expenses, loss of time or any other item of recovery.

In view of our decision in this case we deem it apropos to set forth the extent of the evidence of pain and suffering sustained by the plaintiff.

At the time of the accident the plaintiff "blacked out" and, due to the impact of her face in striking the dashboard, her face was numb. After she got out of the car her nose began to hurt and to bleed profusely and, by the time she ar-

rived at the hospital, her left cheek bone was also hurting. The bleeding was stopped at the hospital. There was pain generally in the area of her nose. She was discharged from the hospital at 5:30 p.m. the same day. After leaving the hospital, her nose continued hurting and in a few days her face began to swell and the area around one of her eyes turned blue.

Her nose continued to bother her and Dr. Theodore Sadock was consulted on June 25, 1956. He determined that the nose was fractured and, on the next day, June 26, he performed a refracture at St. Joseph's Hospital. She was discharged from the hospital the following day, June 27. The nose was bandaged and splinted and remained bandaged for about one week. She was discharged by Dr. Sadock on July 10 and he did not see her again until February 28, 1957, the day before the trial. At the time of the trial the plaintiff testified that her nose felt normal most of the time but that it "sort of hurts" when she sneezed or blew her nose. Her mother also testified that she believed her daughter had pain when she sneezed or blew her nose.

The plaintiff testified that at the time of the accident she cracked two teeth that hurt when she ate or drank something cold. However, she testified that she really didn't know that she had two cracked teeth, stating that she had not gone to a dentist nor had she been advised by her doctor that she should go to a dentist.

Dr. Sadock testified in response to a question as to whether or not a fracture of the nose was painful:

"I think all fractures are painful. Displacement of the bone, that caused a lot of swelling and pressure on nerves. I would say the usual thing is they have considerable pain with a fracture."

The mother testified that Katherine's pain and complaints as a result of the accident continued until she was taken to Dr. Sadock and that, after the refracture, she had difficulty in breathing and "a little pain, I imagine * * * for a week or two."

Dr. Sadock further testified that he realigned the nose through the inside of the nostril and that he considered any type of surgery where the child is put to sleep and taken to an operating room as major surgery. Dr. Sadock further testified that there was some pain after an operation of this kind but that after the splints and packing are removed the pain usually disappears. After discharging the patient on July 10, the doctor recommended no further treatment and at the time of the trial testified that he felt she had a good result, the fracture was reduced properly and, "I think she will be all right."

■ We recognize the difficulty of determining what is proper recompense for the pain and suffering of the plaintiff in this or any other case. In this respect we deem it helpful to consider other verdicts in similar cases insofar as it is possible to make such comparison. However,

"[i]n the determination of whether a verdict is excessive, the nature and extent of the injury—whether it is of a temporary or permanent nature —the extent of future discomfort, suffering, expenses, and diminution of earning capacity to be expected as a result thereof, pain and suffering already undergone, and expenses already incurred must be considered. * * * In short, each case must be ruled chiefly upon its own facts and circumstances. * * *" 15 Am.Jur., Damages § 206, p. 624.

A lengthy annotation on damages involved in cases where injury to the nose was sustained appears at 16 A.L.R.2d 312 and is continued in A.L.R.Supp.Serv. Vols. 1–50 at page 963, et seq. In reviewing those cases, we do not intend to adopt the doctrine of comparable verdicts, but fully recognize distinguishing circumstances and economic factors.

In particular we note Boydston v. Twaddell, 57 N.M. 22, 253 P.2d 312, 315, wherein the plaintiff received three fractured ribs, a crushed nose cartilage, a laceration of the lip, shock and minor face and leg injuries. He was hospitalized for three or four days and was under doctor's care for one month. His chest was taped and anaesthetic injections were given for the relief of pain. In addition, the plaintiff lost one week from work. On this evidence, the jury returned a verdict for $4,500. We stated there, after reviewing the evidence:

"While these injuries are in no sense trivial, still we feel the award received by Boydston is excessive and should be reduced to $1,500."

We note that the $1,500 included special damages for medical bills and time lost from work.

In Rosa v. American Oil Co., 129 Conn. 585, 30 A.2d 385, the plaintiff received a broken nose and possible other injuries which were not specified. The extent of medical expenses and other special damages incurred, if any, does not appear in the report of the case. The jury returned a verdict for $6,000 which was reduced by the trial court to $3,650. On appeal, the appellate court found the verdict still excessive and ordered a further reduction in the amount of $1,150.

In Baier v. Associated Metals and Minerals Corp., 1944, 93 Pittsb.Leg.J., Pa., 395, the plaintiff suffered a fracture of the nose

and a displaced septum which caused pain one year after the injury. The plaintiff also sustained a fracture of the patella, several cuts over the eye, abrasions and contusions of the body. The plaintiff's leg was placed in a cast causing incapacity for a period of six weeks. Pain was present in the injured patella one year after the time of the accident and further surgery was required. Medical bills in the amount of $273 were incurred. The jury returned a verdict for $3,101.20. The appellate court found the award to be excessive and ordered a remittitur of $500.

In Candage v. Belanger, 143 Me. 165, 57 A.2d 145, the plaintiff sustained a broken nose which was left slightly misshapen. Other injuries included a transverse fracture of the right leg, numerous cuts and bruises with resulting small scars on the forehead. The plaintiff was hospitalized for one week and was thereafter incapacitated at home for a period of two months. The incidental special damages incurred by the plaintiff totaled $340.35. The trial jury returned a verdict for $2,840.35. The appellate court found the verdict to be excessive and ordered a remittitur in the amount of $1,000.

The case of Pendola v. State, La., App. 1941, 4 So.2d 28, involved injuries to a minor girl. The child sustained a fracture of the nose and a laceration of the upper lip. This resulted in a slight deformity at the bridge of the nose, which was not very noticeable, as well as a scar on the front of the upper lip. The judgment of the trial court was for $1,000. Upon review the appellate court ordered the award reduced to $750.

The plaintiff in McBride v. Clarida, Mo. App.1953, 254 S.W.2d 36, received permanent nose injuries and other injuries resulting in headaches and nervousness for a period of several months. The plaintiff lost six weeks' employment and the record contained considerable testimony as to pain and suffering. The jury returned a verdict for $5,000 which the appellate court found to be excessive and reduced to $3,000 by remittitur.

In Butler v. Butler, D.C., 109 F.Supp. 914, the plaintiff sustained a fractured nose and bruises of the lip, chest and back. The plaintiff complained of pains in the back and several nosebleeds after the accident. The special damages, including loss of wages, doctors' bills and damages to the plaintiff's automobile, totaled $663.31. Upon review of the verdict in the motion for new trial on grounds of excessiveness, the court found that there was so little testimony as to pain and suffering that an allowance by the jury of $836.69 for pain and suffering was excessive and, therefore, ordered the total award reduced to $900.

This court will grant relief from excessive verdicts, Hall v. Stiles, 57 N.M. 281,

258 P.2d 386. But when and under what circumstances?

In Nelson v. Hill, 30 N.M. 288, 232, P. 526, 528, we said:

"As before seen, the district judge declined to find that the verdict was the result of passion or prejudice, but did find that it was excessive in the amount of $1,000. We likewise fail to find passion or prejudice on the part of the jury. If the result was reached because of passion or prejudice, the whole verdict would be vitiated and a new trial would necessarily result. But excessiveness is evidence only, and not proof conclusive, of passion and prejudice. The jury in this case simply overestimated the damages to which appellee was entitled and to a greater extent, we think, than was found by the trial court. Under all the circumstances we believe that $500 is ample to compensate the appellee and to punish the appellant. A remittitur down to $500 will be required. The judgment is correct, but the damages are excessive. If appellee shall remit down to $500 within 30 days from this date, the judgment will be affirmed for that amount, and, otherwise, the same will be reversed, and the cause remanded for a new trial. * * *"

See, also, Mares v. New Mexico Public Service Co., 42 N.M. 473, 82 P.2d 257.

After noting injuries sustained by the plaintiff Boydston and ordering a reduction from $4,500 to $1,500 as hereinabove described, this court continued in the case of Boydston v. Twaddell, 57 N.M. 22, 27, 253 P.2d 312, 315, with a description of injuries suffered by the plaintiff Uzueta:

"* * * Shock and pain in neck on arrival at hospital; compression fracture of fifth cervical vertebra, with no displacement and no damage to the spinal cord; fractured jaw on left side; deep laceration on undersurface of chin; amputation of little finger on right hand at middle joint. He wore a cast on his neck for eight weeks and a felt collar thereafter for another four weeks. His jaw was wired for approximately a month and a half. After the removal of the wire Uzueta was unable to open his mouth for four weeks. He ate nothing but liquids through a tube for seven weeks. He was in the hospital night and day for one week, and for a second week was there at night. * * *"

"The jury assessed his damages for medical and hospital care and loss of earnings at $700.60. He was, in addition, awarded $7,500 compensatory damages. Again we view the amount of damages awarded in compensation as excessive and the total damages awarded to Uzueta should be reduced to the sum of $5,700.60."

However, less than six months later, in Hall v. Stiles, 57 N.M. 281, 285, 258 P.2d 386, 389, we said this:

"But the findings of the jury should not be disturbed as excessive, except in extreme cases, as where it results from passion, prejudice, partiality, sympathy, undue influence, or some corrupt cause or motive where palpable error is committed by the jury, or where the jury has mistaken the measure of damages. However, the mere fact that a jury's award is possibly larger than the court would have given is not sufficient to disturb a verdict."

In their briefs on motion for rehearing, both the appellee and amici curiae have suggested that our holdings need be clarified in relation to the action taken in Nelson, Mares, Boydston, and Hall cases. We feel there is merit in this suggestion.

■ Our former practice of ordering reductions of awards where we thought them to be excessive, without specifically finding an indication of passion, prejudice, etc., as was done in the Mares and Boydston cases, was changed in the case of Hall v. Stiles, without mention of the former cases. In view of possible conflicts, we hereby expressly overrule such practice as was followed in the Mares and Boydston cases in favor of the rules later announced in Hall v. Stiles.

■ Accordingly, we reexamine the evidence of pain, suffering, and disfigurement in this case in the light most favorable to the appellee and we find that there is no substantial evidence to support a verdict in the amount of $5,000. We further find the verdict so excessive as to indicate "passion, prejudice, partiality, sympathy * * * or * * * [that] the jury has mistaken the measure of damages." Hall v. Stiles. Excessiveness of the verdict being the sole question on appeal, our finding of an indication of "passion, prejudice, partiality, sympathy * * * or * * * [that] the jury has mistaken the measure of damages" does not in this instance vitiate the jury's finding of negligence. 5B C.J.S. Appeal & Error § 1861 p. 307. Likewise we find the trial court erred in refusing to order a remittitur or a new trial.

Therefore, the judgment of the trial court will be affirmed on the condition that the plaintiff shall file with the clerk of this court within five days hereafter a remittitur of the sum fixed by this court as excessive damages, to wit: $3,000.

In the event such remittitur is not so filed, the cause shall be remanded to the lower court with directions to grant the defendants, Vincent Vigil and Ann E. Vigil, a new trial solely on the question of damages. The costs of the appeal will be assessed against the appellants.

It is so ordered.

LUJAN, C. J., McGHEE and COMPTON, JJ., and GARNETT R. BURKS, District Judge, concur.

SADLER, J., not participating.